# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1493

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | South Dakota. |
| William J. Oligmueller, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  October 19, 1999

Filed:   December 6, 1999

_____

Before BOWMAN, LAY, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

The United States appeals the sentence imposed on William Oligmueller who pleaded guilty to two counts of making false and fraudulent statements to a FDIC insured bank in violation of 18 U.S.C. § 1014.  We affirm.

## I. BACKGROUND

Oligmueller misrepresented the amount of cattle he owned in order to secure a loan.[1] The bank discovered the fraud when bank officers went with Oligmueller to inspect the collateral and he admitted that he had lied about the number of cattle he had. At the time the fraud was discovered, Oligmueller owed the bank approximately $894,000 on a loan that was secured by livestock, feed, and machinery. The bank did not have a mortgage on Oligmueller's real property.

Oligmueller began liquidating his assets, both pledged and unpledged, in September 1997, in order to repay the bank. In August 1998, Oligmueller's son, Todd, took over the ranching operations and was given power of attorney by both of his parents. Todd continued to sell assets and make payments. By October 1998, through asset liquidation, Oligmueller had repaid the bank approximately $808,000. The bank also received $28,000 in cash payments directly from Oligmueller. This brought the bank's loss down to approximately $58,000.

Oligmueller made extraordinary efforts to insure that his debt was repaid to the bank. He pledged assets not previously pledged to the bank, including his ranch, and worked to prepare assets for sale so that the bank would receive the highest possible return. Oligmueller also took a job with a farm supply company, and set up a lawn mower repair business. Additionally, he turned over approximately half of his social security payment each month to pay his debts.

Oligmueller entered a plea of guilty to making false statements to the bank. At the sentencing hearing, the district court found the amount of the bank's actual loss was $58,000, and the intended loss to be zero. Based on the amount of loss, the district

---

[1]The misrepresentation was made to First State Bank Miller, in Miller, South Dakota.

court[2] determined that the base level of the sentence was 11 under Sentencing Guidelines Manuel section 2F1.1. The district court also found a two-level enhancement for more than minimal planning and a two-level decrease for acceptance of responsibility. The district court then departed downward one level, giving Oligmueller a final offense level of 10,[3] on the basis of Oligmueller's extraordinary efforts to rehabilitate himself. The United States appeals the district court's sentencing determination on the basis of the loss calculation and the downward departure. We affirm, although for different reasons.

## II.    DISCUSSION

We review de novo the district court's interpretation and application of the Sentencing Guidelines. See United States v. Whitehead, 176 F.3d 1030, 1042 (8th Cir. 1999). The district court's determination of the amount of loss is reviewed for clear error. See id. We may affirm the district court on any basis supported by the record. See Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1180 (8th Cir. 1998).

### A.    The Loss Amount

Under section 2F1.1 of the Sentencing Guidelines, the amount of loss used to determine a sentence for a fraudulent loan application is the greater of the actual loss to the victim or the intended loss. See U.S.S.G. § 2F1.1 App. Note 8(b); see also United States v. Wells, 127 F.3d 739, 745 (8th Cir. 1997). The district court found the

---

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

[3]An offense level of 10 equates to a sentence of six to twelve months. Oligmueller was actually sentenced to one month of actual custody and five months of home detention. He was also ordered to pay restitution in the amount of $147,142.44.

intended loss was zero. The government contends that the intended loss is the possible or potential loss to the victim. We disagree. We have held that *intended loss* "mean[s] just that—the loss the defendant intended to cause to the victim." Id. at 746. There is no evidence that, at the time of the fraudulent conduct, Oligmueller intended to repay anything less than the full value of the loans. Therefore, the district court was correct in determining that the intended loss was zero.

Because the intended loss is zero, the amount of actual loss will determine the sentence. The district court found the actual loss to be $58,000. It arrived at this figure by taking the amount of debt at the time the fraud was discovered, $894,000, and subtracting the payments Oligmueller made after the fraud was discovered, $836,000. However, in determining the amount of actual loss, a sentencing court is not permitted to consider payments made to the bank after the fraud is discovered unless the payments are the result of the sale of pledged assets. U.S.S.G. § 2F1.1 App. Note 8(b); see also United States v. Brekke, 152 F.3d 1042, 1046 (8th Cir. 1998); United States v. Sheahan, 31 F.3d 595, 603 (8th Cir. 1994), United States v. Jindra, 7 F.3d 113, 114 (8th Cir. 1993). Of the $808,000 paid to the bank from the sale of assets, only $65,000 resulted from the sale of pledged assets, making the actual loss amount $829,000. That amount would place Oligmueller at an offense level of 17 with a sentence of twenty-four to thirty months. See U.S.S.G. § 2F1.1(b)(1)(L).

The Sentencing Guidelines, however, allow either a downward or an upward departure if the amount of loss significantly overstates or understates the risk to the lending institution. See U.S.S.G. § 2F1.1 App. Note 8(b). This departure should reflect the extent of the overstatement or understatement. In this case, the loss figure of $829,000 significantly overstates the risk to the bank. Oligmueller had sufficient unpledged assets to support the loan amount and to pay the bank most of the amount it was owed, as shown by the fact he has paid the bank $836,000. Accordingly, we find that a downward departure is warranted in this case to a level that corresponds to

a loss figure of $58,000, placing Oligmueller at a sentencing level of 11. <u>See</u> U.S.S.G. § 2F1.1(b)(1)(F).

## B.      The Downward Departure

We review a district court's decision to make a sentencing level departure for an abuse of discretion. <u>See</u> <u>Koon v. United States</u>, 518 U.S. 81, 98 (1996). The district court departed downward under section 5K2.0 on the basis of Oligmueller's extraordinary efforts at rehabilitation as demonstrated by his full cooperation with the bank.

Section 5K2.0 allows for a departure if there is an aggravating or mitigating circumstance not taken into consideration by the guidelines. <u>See</u> U.S.S.G. § 5K2.0. The Supreme Court has interpreted this to require that a case be unusual enough "for it to fall outside the heartland of cases in the Guideline." <u>Koon</u>, 518 U.S. at 98. We have previously held that cases can fall outside the heartland when there are extraordinary efforts at restitution.[4] <u>See</u> <u>United States v. Garlich</u>, 951 F.2d 161, 163 (8th Cir. 1991). When this occurs, the district court has the authority to depart downward. <u>See</u> <u>id.</u> We believe this is such a case.

Oligmueller voluntarily began making restitution almost a year before he was indicted. He worked hard to ensure that his assets received the highest possible value, including taking care of the crops until harvest, carefully tending the livestock until sale, and loading the hay trucks for the bank. He often worked sixteen-hour days. He turned over his life insurance policy and his wife's certificate of deposit. He also took

---

[4]Although the district court termed Oligmueller's efforts at repayment "rehabilitation" rather than restitution, we find that they can be properly viewed as restitution. The factual basis for the downward departure is the same.

an outside job, and gave up his home.[5]  Additionally, the restitution paid constitutes a substantial percentage, nearly ninety-four percent, of that owed to the bank. Therefore, we find no abuse of discretion by the district court in making this departure.

We affirm the defendant's sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5] Oligmueller and his wife now live with their daughter.