# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2214

_____

United States of America,

Plaintiff - Appellant,

v.

Lynn Marie Lazenby,

Defendant - Appellee.

_____

No. 05-2216

_____

United States of America,

Plaintiff - Appellee,

v.

Christine Marie Goodwin,

Defendant - Appellant.

*
*
*
*
*
*
*
*
*

Appeals from the United States
District Court for the
Northern District of Iowa.

*
*
*
*
*
*
*
*
*
*

_____

Submitted: January 11, 2006
Filed: March 10, 2006

_____

Before LOKEN, Chief Judge, McMILLIAN[*] and MELLOY, Circuit Judges.
_____

LOKEN, Chief Judge.

Lynn Marie Lazenby and Christine Marie Goodwin pleaded guilty to conspiring to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846. The district court sentenced Lazenby to twelve months and one day in prison, a substantial downward variance from the bottom of her advisory guidelines range. One month later, a different judge of the same court sentenced Goodwin to 87 months in prison, the bottom of her advisory guidelines range. The United States appealed Lazenby's sentence and Goodwin appealed her sentence as unreasonable under 18 U.S.C. § 3553(a) and United States v. Booker, 543 U.S. 220 (2005). After oral arguments, the court on its own motion consolidated the appeals for disposition. We conclude that Lazenby's sentence is unreasonable and that the district court did not adequately consider a number of relevant factors in determining Goodwin's sentence. Accordingly, we remand both cases for resentencing.

## I.

Lazenby and Goodwin fell in love with the same methamphetamine manufacturer and distributor, Patrick Lazenby (Lynn Lazenby's ex-husband, who is now serving a long federal prison sentence). The two women became methamphetamine users at Patrick's behest. More significantly, Lazenby and Goodwin assisted Patrick and other more culpable conspirators in the manufacture and distribution of methamphetamine.

_____

[*]The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E. The opinion is consistent with the views expressed by Judge McMillian at the conference following the oral arguments.

Lazenby's Offense Conduct.  Beginning in early 2003, Lazenby purchased precursor items for the manufacture of methamphetamine and drove Patrick to rural areas where he could steal anhydrous ammonia.  When Patrick was arrested in early 2004, Lazenby took up with a new boyfriend, conspirator Daniel Allie.  She remained active in the conspiracy, purchasing precursor items for Allie and allowing her home to be used for the sale and use of methamphetamine in exchange for user amounts of methamphetamine.  When arrested in October 2004, Lazenby called Allie at her home to warn him she had been arrested.  A later search of the home uncovered evidence of methamphetamine manufacture -- peeled lithium batteries, burned aluminum foil, muriatic acid, a cooler and tubing that smelled of anhydrous ammonia, baggies, and a small amount of methamphetamine.  The Iowa Department of Human Services removed Lazenby's five-year old son from the home when his hair tested positive for chronic exposure to methamphetamine.  In her plea agreement, Lazenby stipulated she "knew that Allie and his associates used at least 100 grams of pseudoephedrine in the manufacture of methamphetamine."

Goodwin's Offense Conduct.  In March 2003, Goodwin was caught shoplifting lithium batteries and pseudoephedrine at a Wal-Mart store.  A search incident to the arrest uncovered more pseudoephedrine, four cans of starter fluid, two propane cylinders showing signs of exposure to anhydrous ammonia, and other objects consistent with methamphetamine production.  When Goodwin was again arrested for shoplifting lithium batteries in September 2003, police uncovered a spoon and home-made pipe that tested positive for methamphetamine.  As a result of the arrests, Goodwin began living at the Gerald R. Hinzman Center, a half-way house.  She also maintained a "furlough residence" with Patrick Lazenby in Cedar Rapids.  A warrant search of this residence in January 2004 uncovered evidence of methamphetamine production, including tanks of anhydrous ammonia, boxes of pseudoephedrine, heavy tubing, and lithium batteries.  In her plea agreement, Goodwin stipulated that she "purchased at least 300 grams of pseudoephedrine for use in the manufacture of methamphetamine."

Lazenby's Sentencing.    In determining Lazenby's advisory guidelines sentencing range of 70 to 87 months in prison, the parties and the court agreed on a base offense level of 32 based on at least 100 grams but less than 300 grams of pseudoephedrine.    See U.S.S.G. § 2D1.11(d)(4).    The government agreed that Lazenby qualified for "safety valve" relief.    The district court denied a two-level reduction for her role in the offense.    To support her claim for a downward variance from the guidelines range, Lazenby called three witnesses who testified that she was allowed to care for her son during weekdays and has a loving relationship with him, that she has attended meetings of a Moms Off Meth support group and passed post-arrest drug tests, and that she is a valued and trusted employee.

The district court sentenced Lazenby to twelve months and one day in prison. The court found it highly unlikely she will commit future crimes and noted that she made extraordinary efforts to reunite with her son, probably used methamphetamine only on the weekends because she was able to "maintain a high level of job performance on what would be a relatively stressful job," and was drawn into the conspiracy as a result of her poor choices in relationships with men.  Regarding the need to avoid unwarranted sentencing disparity, the court stated:  "the sentence that I'm about to give is a sentence that I would give for a similarly situated individual post-Booker, and hopefully the sentences on the whole will be somewhat less harsh in the post-Booker world."  The government objected to the sentence as unreasonable and now appeals.

Goodwin's Sentencing.  One month later, Goodwin appeared for sentencing before a different district judge who had previously sentenced Patrick Lazenby and eleven other participants in separately prosecuted but overlapping methamphetamine conspiracies.  The parties and the court agreed on a base offense level of 34 based on at least 300 grams but less than 1000 grams of pseudoephedrine.  See U.S.S.G. § 2D1.11(d)(3).  Goodwin's base offense level is two levels higher than Lazenby's because Goodwin stipulated to being involved in a greater quantity of

pseudoephedrine. The government agreed that Goodwin qualified for "safety valve" relief. The government explained that it was not filing a substantial assistance motion because, while Goodwin cooperated with the government and stood ready to testify against other conspirators, her testimony was not needed when they pleaded guilty. As with Lazenby, the district court denied a two-level reduction for Goodwin's role in the offense. This produced an advisory guidelines range of 87-108 months.

To support her claim for a downward variance from the guidelines range, Goodwin introduced letters from family members and present and former employers stating that she has ended her dependence on drugs, reestablished ties with her children and her niece, and become a reliable and valued employee. Government counsel urged a sentence at the bottom of the guidelines range but, responding to a question by the court, said she was not authorized to support a sentence below that range. Government counsel noted that the court could consider the time Goodwin spent at the Hinzman Center in deciding whether to grant a downward variance under § 3553(a), because the Bureau of Prisons was unlikely to credit that time towards her sentence. But again, the government refused to request a sentence beneath the guidelines range on that ground. The district court then sentenced Goodwin to 87 months in prison. Goodwin appeals the sentence as unreasonable.[1]

## II.

Under Booker, the sentencing guidelines are no longer a mandatory regime. Instead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. § 3553(a). 543 U.S. at 259-60. In fashioning an appropriate sentence, the district court must first calculate the applicable

---

[1]The United States initially argued that we have no jurisdiction to review a sentence that is within the defendant's properly determined advisory guidelines range but withdrew this argument after our contrary decision in United States v. Mickelson, 433 F.3d 1050, 1052-53 (8th Cir. 2006).

guidelines sentencing range. <u>United States v. Haack</u>, 403 F.3d 997, 1002-03 (8th Cir.), <u>cert. denied</u> 126 S.Ct. 276 (2005). The court may then impose a sentence outside the range in order to "tailor the sentence in light of [the] other statutory concerns" in § 3553(a). <u>Booker</u>, 543 U.S. at 245-46. When the district court has correctly determined the guidelines sentencing range, as in these cases, we review the resulting sentences for reasonableness, a standard akin to our traditional review for abuse of discretion.

The Guidelines were fashioned taking the other § 3553(a) factors into account and are the product of years of careful study. Thus, the guidelines sentencing range, though advisory, is presumed reasonable. <u>See</u> <u>United States v. Lincoln</u>, 413 F.3d 716, 717 (8th Cir. 2005); <u>United States v. Mykytiuk</u>, 415 F.3d 606, 608 (7th Cir. 2005). When the district court varies from the guidelines range based upon its analysis of the § 3553(a) factors, we must examine whether "the district court's decision to grant a § 3553(a) variance from the appropriate guidelines range is reasonable, and whether the extent of any § 3553(a) variance . . . is reasonable." <u>United States v. Mashek</u>, 406 F.3d 1012, 1017 (8th Cir. 2005); <u>see</u> <u>Haack</u>, 403 F.3d at 1004. "Sentences varying from the guidelines range . . . are reasonable so long as the judge offers appropriate justification under the factors specified in 18 U.S.C. § 3553(a). How compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed." <u>United States v. Johnson</u>, 427 F.3d 423, 426-27 (7th Cir. 2005) (citation omitted). A "range of reasonableness" is within the court's discretion. <u>United States v. Saenz</u>, 428 F.3d 1159, 1165 (8th Cir. 2005).

The notable aspect of these appeals is the extreme disparity in the sentences imposed on two remarkably similar participants in the same criminal conspiracy. Moreover, a number of factors suggest that substantially greater leniency was afforded the *more culpable* defendant, Lynn Lazenby:

-6-

• Both Lazenby and Goodwin were drawn into the conspiracy by their relationship with ringleader Patrick Lazenby. When Patrick was convicted in early 2004, Lazenby took up with conspirator Daniel Allie and continued to assist in the manufacture and distribution of methamphetamine. By contrast, Goodwin's PSR and plea agreement do not link her with the conspiracy after early 2004.

• When arrested in October 2004, Lazenby called Allie and advised him to remove incriminating items from her home. Though unsuccessful, this was an obvious attempt to obstruct the investigation.

• Goodwin pleaded guilty on November 10, 2004. Within a week, three other conspirators including Lazenby pleaded guilty, and a fourth changed his plea one month later. Goodwin cooperated fully. She was willing to testify at Lazenby's sentencing in support of portions of the PSR to which Lazenby objected. On the eve of sentencing, Lazenby admitted these portions of the PSR were true.

• Both Lazenby and Goodwin are single mothers who neglected their children while participating in the conspiracy and have made significant efforts to reunite with the children and become suitable parents. Lazenby's five-year-old son was removed from her home when testing revealed chronic exposure to methamphetamine. Goodwin's children were not directly harmed by the conspiracy.

Lazenby's Sentence. We conclude that the district court granted Lazenby an unreasonable downward variance. The twelve-month prison sentence is 83% below the 70-month bottom of her advisory guidelines range. "An extraordinary reduction must be supported by extraordinary circumstances." United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005). This extraordinary variance is not supported by comparably extraordinary circumstances. Lazenby's significant post-offense rehabilitative conduct is relevant in evaluating the § 3553(a) factors. Cf. United States v. Kapitzke, 130 F.3d 820, 823-24 (8th Cir. 1997) (atypical post-offense rehabilitation

may support guidelines downward departure). The other factors cited by the district court, though discouraged or prohibited departure factors under the mandatory guidelines, may also be considered in applying the § 3553(a) factors under Booker. But taken together, they do not justify an 83% variance because a twelve month sentence does not adequately reflect the seriousness of and provide just punishment for Lazenby's drug offense. See 18 U.S.C. § 3553(a)(2)(A). She assisted two different methamphetamine traffickers in the manufacture and distribution of this destructive drug for at least eighteen months. She allowed her house to be used by the drug ring, greatly endangering her young son while helping the conspiracy ruin the lives of its customers. Her post-offense rehabilitation is dramatic and hopefully permanent, but a twelve month sentence for this offense conduct "lies outside the limited range of choice dictated by the facts of the case." United States v. Haack, 403 F.3d 997, 1004 (8th Cir.), cert. denied 126 S.Ct. 276 (2005); see United States v. Rogers, 400 F.3d 640, 642 (8th Cir. 2005), cert. denied, 126 S. Ct. 1020 (2006).

Finally, the twelve month sentence is unreasonable because it results in unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. See 18 U.S.C. § 3553(a)(6). The district court candidly met this point by observing that "hopefully the sentences on the whole will be somewhat less harsh in the post-Booker world." But that is an issue for Congress, not a valid basis for exercising discretion under Booker. Congress has made avoiding unwarranted disparity a legislative priority. The disparity between Lazenby's sentence and the far greater sentences imposed on the other less culpable members of these related conspiracies does not adequately serve this congressional objective. Lazenby's case must be remanded for resentencing.

Goodwin's Sentence. Goodwin's appeal is more difficult. The district court expressly considered the Guidelines and the sentencing factors in § 3553(a) and imposed a sentence at the bottom of the advisory guidelines range. This sentence is presumed reasonable; only highly unusual circumstances will cause this court to

conclude that the presumption has been rebutted. But a number of circumstances make this case highly unusual. First, the prosecutor stated at sentencing that Goodwin and Lazenby were similarly situated members of the conspiracy. In Goodwin's plea agreement, she stipulated to being involved with 300 grams of pseudoephedrine. Less than two weeks later, Lazenby entered into a plea agreement stipulating to 100 grams of pseudoephedrine. The higher quantity increased Goodwin's offense level by two levels and the bottom of her guidelines range by seventeen months. Yet nothing in the fact sections of the two PSRs -- prepared by the same probation officer -- justifies this disparity. Prior to Booker, the district court lacked discretion to remedy this type of Guidelines-created disparity. Booker gave courts discretion to cure such an injustice, but the court did not consider this factor.

Second, Goodwin was the first of her co-defendants to plead guilty. It is a fair inference that her pledge of full cooperation played a role in the rapid guilty pleas entered by her conspirators, and in Lazenby dropping objections to the offense as described in her PSR. As a result, Goodwin's testimony was not needed, causing the government to exercise its discretion not to move for a § 5K1.1 downward departure. Prior to Booker, the court was then virtually precluded from considering this factor. See, e.g., United States v. Moeller, 383 F.3d 710 (8th Cir. 2004). Under Booker, the prosecution's evaluation of the cooperation factor remains critical but is less controlling. The district court did not take this change into account.

Third, the district court appeared to give too much weight to the prosecutor's statement that she was not authorized to support a downward variance. Under the Sentencing Reform Act and Booker, sentencing discretion rests in the final analysis with the sentencing judge, not with the prosecution.

Finally, and perhaps most importantly, the district court gave too little weight to the extreme disparity between the sentences imposed on two similarly situated conspirators, Lazenby and Goodwin. Even under the mandatory Guidelines, we

reviewed variations in sentencing among similarly situated defendants for abuse of discretion. See United States v. Thompson, 51 F.3d 122, 126 (8th Cir. 1995). Under Booker, that discretion has increased. Perfect parity among the sentences imposed on the various members of a criminal conspiracy is no doubt impossible to achieve, given the complexity of the task. But the extreme disparity in these two sentences not only fails to serve the legislative intent reflected in § 3553(a)(6), it also suggests an arbitrary level of decision-making that fails to "promote respect for the law," § 3553(a)(2)(A). Here, it is apparent the district court believed that Lazenby's sentence was unreasonably low. That presented the court with a delicate and difficult problem in sentencing Goodwin, which illustrates the virtue of having the members of a criminal conspiracy sentenced, when possible, by the same district judge, even if all have pleaded guilty. The problem is significantly reduced because we have now reversed Lazenby's sentence. In these unusual circumstances, we conclude that Goodwin's sentence should be reversed as well.

The judgments of the district court are reversed and the cases are remanded to the district court for resentencing of Lynn Lazenby and Christine Goodwin.

_____