# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3142

_____

United States of America,             *
                                      *
            Appellant,                *
                                      *   Appeal from the United States
      v.                              *   District Court for the
                                      *   District of Minnesota.
Gerald Ture,                          *
                                      *
            Appellee.                 *

_____

Submitted: March 14, 2006
Filed: June 13, 2006

_____

Before MURPHY, BOWMAN, and BENTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The government appeals the sentence the District Court imposed on Gerald Ture for willfully attempting to evade federal income tax, arguing that the sentence is unreasonable because Ture's sentence did not include a term of imprisonment. We agree, vacate the sentence, and remand the case for resentencing.

I.

The government filed a six-count indictment against Ture. Counts one through three alleged that Ture willfully attempted to evade federal income tax for the tax years 1997, 1998, and 1999, respectively, in violation of 26 U.S.C. § 7201 (2000).

Counts four through six alleged that Ture willfully failed to file federal income tax returns for the tax years 1997, 1998, and 1999, respectively, in violation of 26 U.S.C. § 7203.  Acting under a plea agreement, Ture entered a guilty plea to count three.  The government and Ture agreed that the remaining counts would be dismissed.[1]

The District Court later held a sentencing hearing, at which time it adopted the factual statements contained in the Presentence Investigation Report ("PSR").  According to the PSR, Ture once owned Drill-A-Matic, Inc., but subsequently transferred his ownership interest in the company.  Even after the transfer of ownership, Ture actively operated Drill-A-Matic as its president.  In 1996, Ture set up a corporate savings account.  By 2000, Ture had withdrawn $647,430.95 from that account and deposited the funds into his personal checking account.  The PSR described how Ture concealed the transfer of those corporate funds:  "In an effort to conceal this income and evade paying personal income tax on these monies, [Ture] instructed the bookkeeper at Drill-A-Matic to post the withdrawals from the corporate savings account as either materials expense or subcontractor expense."  PSR at 2, ¶ 6.  Under the plea agreement, Ture "acknowledge[d] and admit[ted] that the instructions he gave to the bookkeeper were meant to disguise the true nature of the withdrawals from the corporate savings account, in order to evade the payment of income tax to the United States."  Plea Agreement at 2, ¶ 1.  Ture founded R & D Technical Services, Inc., in 1997 and owned a majority interest in it.  From 1997 to 2000, Ture received $249,351.52 in consulting fees from R & D Technical Services, but he never received a Form 1099, nor did he file an income tax return.  Thus, Ture's total earned income during this time period approached $900,000.  According to the PSR, the amount of tax owed on the earned income totaled $240,252.

[1]A conviction on all counts would not have changed the applicable sentencing range because all counts would have been grouped according to the amount of the tax loss.  See U.S. Sentencing Guidelines Manual § 3D1.2(d) (1998).

When referencing Ture's physical condition, the PSR stated that the sixty-eight-year-old Ture suffers from high blood pressure and has a history of coronary heart disease, both of which require medication. In 1998, Ture underwent heart bypass surgery. In 2004, Ture had surgery for carpal tunnel syndrome.

Because the PSR's tax-loss calculation of $240,252 reflected a tax loss greater than $200,000 but less than $325,000, the District Court calculated Ture's base offense level to be 16. U.S. Sentencing Guidelines Manual § 2T4.1(K), (L) (1998). The Court then granted the government's motion for a three-level reduction for acceptance of responsibility, resulting in a total offense level of 13. Id. § 3E1.1. As this was Ture's first offense, his criminal history category was I. Given Ture's offense level and criminal history category, the District Court determined that the sentencing range under the United States Sentencing Guidelines ("Guidelines") was twelve to eighteen months of imprisonment, two to three years of supervised release, and a fine of $3,000 to $30,000.[2] Based on the advisory Guidelines range and the 18 U.S.C. § 3553(a) factors, the District Court sentenced Ture to two years of probation and 300 hours of community service. The Court did not impose a fine because it decided that Ture's "resources will be stretched as they are to pay whatever penalties and back taxes are

---

[2]Ture had objected to the PSR's calculation of a $240,252 tax loss, asserting that the properly calculated tax loss was between $120,000 and $200,000. This tax loss would have resulted in a base offense level of 15. U.S. Sentencing Guidelines Manual § 2T4.1(J), (K). At sentencing, Ture abandoned his objection to the tax loss calculation because the total offense level would have been 13 regardless of the tax loss. Specifically, the Guidelines allow for a two-level reduction for acceptance of responsibility if the offense level is below 16, but allow for a three-level reduction if the offense level is 16 or greater. Id. § 3E1.1. With the maximum acceptance-of-responsibility reduction, Ture's total offense level would have been 13 had the base offense level been either 15 or 16. Ture asserts that the dispute over the tax loss "was meaningless." Appellee's Brief at 3. As far as the Guidelines range is concerned, we agree. We note, however, that the record still reflects that the District Court found the tax loss to be $240,252, which is a meaningful finding when determining an appropriate sentence.

owed to the Internal Revenue Service." Sent. Tr. at 17:7–9. The Court did not order restitution because the Internal Revenue Service would pursue collection of outstanding taxes, interest, and penalties.

The District Court provided its rationale for the sentence at Ture's sentencing hearing and in a separate sentencing memorandum. The District Court stated that its review of the Guidelines and the § 3553(a) factors convinced it that a "probation sentence together with a significant community service requirement and the anticipated cost to defendant of paying back taxes, interest and penalties, constitutes a sentence that is sufficient and not greater than necessary." Sent. Mem. at 2 (July 1, 2005). The Court found "no reason to sentence [Ture] to prison." Id. at 3. In reaching its sentencing decision, the Court also mentioned the following factors: this was Ture's "first criminal offense after a long life"; Ture used "relatively unsophisticated" means to commit the crime; Ture "has cooperated fully with the investigation and his prosecution"; Ture has expressed remorse and has remained law abiding; Ture has a serious heart condition requiring ongoing treatment; there is "no need to protect the public from further crimes" by Ture; Ture's sentence is unlikely to "affect whether other business people commit crimes"; Ture's "federal felony conviction will affect him in significant ways"; and the bottom of the sentencing range, twelve months, is "just above the range where probation is an authorized sentence under the Guidelines." Id. at 3. The Court also mentioned Ture's age as a factor in not sentencing Ture to imprisonment, but later found that Ture still has the ability to work, something the Court deemed "important" so that Ture could "make a significant effort to repay as much as possible" of his "large [tax] bill." Sent. Tr. at 18:9–11. The Court further stated, "There is adequate deterrence with the enormous bill that will be required, the back taxes and penalties, the fact of a federal felony conviction I think all affords adequate deterrence in light of your age and your health condition." Id. at 18:25–19:4. Finally, the District Court referred to Ture's crime as "a terrible mistake and one that is truly unfortunate." Id. at 18:20–21.

On appeal, the government contends, "The non-custodial sentence in this case was unreasonable, and the factors used by the district court cannot support such a sentence." Appellant's Brief at 3. The government asks us "to remand the case to the district court with instructions to impose a reasonable sentence, one that includes at least some period of incarceration." Id. at 19.

II.

As the District Court correctly noted, the Guidelines are no longer mandatory. Though not bound by the Guidelines, district courts "must consult those Guidelines and take them into account when sentencing." United States v. Booker, 543 U.S. 220, 264 (2005). Post-Booker, district courts must first determine the appropriate sentencing range under the Guidelines because that range is still an important sentencing factor. United States v. Haack, 403 F.3d 997, 1002–03 (8th Cir.), cert. denied, 126 S. Ct. 276 (2005). District courts must then decide if a traditional departure under the Guidelines is appropriate. Id. at 1003. Finally, once district courts determine the Guidelines sentencing range, courts must consider the § 3553(a) factors to determine a sentence, i.e., courts must decide whether to impose a Guidelines sentence or to vary from the Guidelines range to impose a non-Guidelines sentence. Id.

The District Court decided that the Guidelines range was twelve to eighteen months of imprisonment, two to three years of supervised release, and a fine of $3,000 to $30,000. The District Court also concluded that no downward departures were warranted under the Guidelines. Neither Ture nor the government challenges the District Court's Guidelines calculations. Instead, the government only challenges the reasonableness of the District Court's variance from the Guidelines range such that no term of imprisonment was imposed. Thus, we review "the resulting sentence[] for reasonableness, a standard akin to our traditional review for abuse of discretion." United States v. Lazenby, 439 F.3d 928, 931–32 (8th Cir. 2006). In performing this

review, we ask "whether the district court's decision to grant a § 3553(a) variance from the appropriate guidelines range is reasonable, and whether the extent of any § 3553(a) variance . . . is reasonable." United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005).

In performing our reasonableness review, we understand that "[t]he Guidelines were fashioned taking the other § 3553(a) factors into account and are the product of years of careful study." Lazenby, 439 F.3d at 932. Thus, although the Guidelines range is advisory, a sentence within that range is presumed to be a reasonable sentence even post-Booker. Id. A non-Guidelines sentence, on the other hand, "may be unreasonable if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." Haack, 403 F.3d at 1004. An extraordinary variance from the Guidelines range must be "supported by comparably extraordinary circumstances." United States v. Claiborne, 439 F.3d 479, 481 (8th Cir. 2006); United States v. Goody, 442 F.3d 1132, 1134 (8th Cir. 2006) (stating "that absent exceptional facts, sentencing a defendant to a sentence dramatically lower than that recommended by the guidelines is an abuse of the district court's discretion"). "The further the district court varies from the presumptively reasonable guideline range, the more compelling the justification based on the 3553(a) factors must be." United States v. Bryant, No. 05-2243, 2006 WL 1227748, * at 1 (8th Cir. May 9, 2006).

The District Court sentenced Ture to two years of probation and 300 hours of community service, but not to imprisonment. This, in effect, amounts to a 100% downward variance from the Guidelines range. This variance is unreasonable because such an extraordinary variance is not supported by extraordinary circumstances. Although the District Court acted well within its discretion to grant a variance, we

conclude that the extent of the variance was unreasonable such that the District Court abused its discretion.

Three reasons counsel our conclusion that the District Court abused its discretion in meting out an unreasonable sentence. First, the District Court failed to accord significant weight to the Guidelines range, to the seriousness of Ture's offense, or to the need to avoid unwarranted sentencing disparities. The resultant sentence also does not promote respect for federal tax laws, provide just punishment, or ensure adequate deterrence to willful tax cheats. See 18 U.S.C. § 3553(a)(2), (4), (6). Giving due weight to these factors, we conclude that any sentence without a term of imprisonment is wholly unreasonable.

Although the Guidelines are advisory, they must still be afforded due weight, especially when they bear on the other sentencing factors in § 3553(a). For example, the Guidelines contain vital information about appropriate sentences for offenses involving taxation:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S. Sentencing Guidelines Manual ch. 2, pt. T, introductory cmt. The Guidelines recognize that "[t]ax offenses, in and of themselves, are serious offenses" and that the amount of the tax loss should be the main focus at sentencing. Id. § 2T1.1, cmt. background. Because "a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one," the Guidelines recognize that "the sanction

-7-

necessary to deter" future tax crimes increases "as the potential benefit from the offense increases." Id. Finally, the Guidelines underscore the importance of sentences including a term of imprisonment:

> Under pre-guidelines practice, roughly half of all tax evaders were sentenced to probation without imprisonment, while the other half received sentences that required them to serve an average prison term of twelve months. This guideline is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length. As a result, the number of purely probationary sentences will be reduced. The Commission believes that any additional costs of imprisonment that may be incurred as a result of the increase in the average term of imprisonment for tax offenses are inconsequential in relation to the potential increase in revenue. According to estimates current at the time this guideline was originally developed (1987), income taxes are underpaid by approximately $90 billion annually. Guideline sentences should result in small increases in the average length of imprisonment for most tax cases that involve less than $100,000 in tax loss. The increase is expected to be somewhat larger for cases involving more taxes.

Id.

The District Court abused its discretion in granting a 100% variance from the Guidelines range, which amounted to a five-level reduction in Ture's total offense level. Given the long duration of Ture's criminal conduct, the tremendous amount of tax evaded, and his enlistment of an employee to assist with the crime, we believe the District Court failed to adequately consider the seriousness of Ture's offense, the goal of promoting respect for our federal tax laws, and the need for a just sentence including imprisonment. The Court also failed to faithfully consider the Guidelines, which strongly advocate in favor of a term of imprisonment for a willful tax evader in these circumstances. Id.; see also id. § 5B1.1, n.2 ("Where the applicable guideline range is in Zone C or D of the Sentencing Table (i.e., the minimum term of

imprisonment specified in the applicable guideline range is eight months or more), the guidelines do not authorize a sentence of probation."); § 5C1.1(f) ("If the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment.").

The District Court also failed to consider the importance of a term of imprisonment to deter others from stealing from the national purse. As the Guidelines explain, willful tax evaders often go undetected such that those who are caught—especially those who are caught evading nearly a quarter-million dollars in tax—must be given some term of imprisonment. The goal of deterrence rings hollow if a prison sentence is not imposed in this case. Finally, the District Court failed to properly consider the need to avoid unwarranted sentencing disparities. Bryant, 2006 WL 1227748, at *2 ("The sentencing guidelines are indeed no longer mandatory, but they continue to be guideposts that must be respected, lest we see a return to the unwarranted sentencing disparities that resulted in the adoption of the guidelines themselves."). A review of Ture's offense and the factors the District Court considered almost begs the question of who gets prison if Ture does not. As the Guidelines illustrate, only half of the tax evaders actually convicted historically received imprisonment as part of their sentences. To reduce sentencing disparities, the Guidelines sought to ensure more tax evaders were sentenced to prison, specifically focusing on those who evaded more than $100,000 in federal taxes. Ture fits that bill.

The second reason the District Court abused its discretion is because it wrongly accorded significant weight to an improper factor. In deciding against a term of imprisonment, the District Court placed a great deal of weight on the fact that Ture owes a substantial amount of back taxes, interest, and penalties. We deem this factor entirely improper and believe it results in bad public policy. If district courts were free to reduce prison sentences as the amount of tax loss rises, willful tax evaders

would benefit as the amount of the government's tax loss rises, i.e., the lesson would be the more you cheat, the more lenient your sentence. The opposite is true.

Third, the remaining factors—though certainly relevant—did not justify a sentence without a term of imprisonment. These remaining factors simply are not so extraordinary as to warrant a no-prison sentence. For example, the District Court stated that this was Ture's first offense, that he has expressed remorse, and that he has cooperated with his prosecution. These factors weighed heavily in Ture's Guidelines range, as Ture's limited criminal history and the three-level reduction for acceptance of responsibility already reduced the sentencing range. These factors represent nothing so extraordinary as to support the extraordinary variance needed to eliminate a term of imprisonment. Besides, Ture's serious criminal offense, though his first, lasted nearly four years and involved large sums of money. The District Court also mentioned that Ture employed relatively unsophisticated means to commit his crime. Although the Guidelines somewhat consider this factor by imposing a two-level enhancement for sophisticated concealment, U.S. Sentencing Guidelines Manual § 2T1.1(b)(2), we see nothing about Ture's crime to make it so extraordinarily unsophisticated as to separate it from other willful tax evasions. Ture enlisted an employee to conceal $647,430.95 in income from the federal government by using a bookkeeping maneuver to treat Ture's personal income as materials or subcontractor expenses. Finally, the District Court considered Ture's health condition and age in determining that Ture should not go to prison. Although we note that the Guidelines allow courts to consider age, id. § 5H1.1, and whether a defendant is "seriously infirm," id. § 5H1.4, when considering downward departures, the District Court did not consider these Guidelines provisions. Instead, the Court simply listed age and health as additional reasons for a no-prison sentence, stating that Ture should work to pay off his debt to the Internal Revenue Service. The Court's logic does not convince us that Ture's age and health are so extraordinary that they eliminate the need for imprisonment. Moreover, the District Court used these factors to essentially conclude that Ture is too old and sick for prison, but he is young and well enough to

work to pay off his substantial tax debt. Though the District Court certainly can consider Ture's age and health in determining an appropriate sentence in light of all of the sentencing factors, the District Court's rationale to justify a no-prison sentence is unreasonable.

The bottom line is that a proper evaluation of the relevant sentencing factors leads inexorably to the conclusion that a reasonable sentence for Ture must include a term of imprisonment. As we recently stated, "There is nothing so extraordinary here that supports a substantial deviation from the results contemplated by Congress and the resulting sentence is unreasonable." United States v. Givens, 443 F.3d 642, 646 (8th Cir. 2006).

III.

For the reasons discussed, we vacate the sentence and remand the case to the District Court for resentencing.

_____
