# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3372

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellant, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  District of Minnesota. |
| Richard L. Carlson, | * |
| | * |
| Appellee. | * |

_____

Submitted: May 14, 2007
Filed: August 20, 2007

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Richard L. Carlson pled guilty to willfully failing to account for and pay over trust fund taxes, in violation of 26 U.S.C. § 7202, and was sentenced to eight months' home confinement, five years' probation, and 1,000 hours of community service. The government appeals the sentence, arguing that it is unreasonable. We vacate the sentence and remand for resentencing.

From 1986 to 2003, Carlson and his brother each owned fifty percent of the capital stock of Jyland Development, Inc. (Jyland), whose business consisted of land development and new home construction. During each of the twenty-four quarters from 1998 to 2003, Carlson withheld payroll taxes from the wages of Jyland's employees, including himself and his brother, but did not pay those taxes over to the Internal Revenue Service (IRS). Carlson asserts that the money was used for business, rather than personal, expenses and that his failure to remit the withheld taxes began after a client defaulted on its obligation and there had been a downturn in the market. The total amount withheld but not remitted by Carlson was determined to be $561,223.76.

Carlson was charged with and pled guilty to one count of willfully failing to account for and pay over trust fund taxes, a violation of 26 U.S.C. § 7202. Prior to pleading guilty, Carlson paid the IRS the full amount of payroll taxes owed. To do so, Carlson withdrew $35,000 from his retirement account and borrowed $175,000 from each of two friends, both of which loans were secured by the equity in his home. At sentencing, the district court adopted, without objection by either party, the factual statements and conclusions contained in the presentence report (PSR). Because of the amount of the tax loss, Carlson's base level offense was calculated to be eighteen. From this, Carlson received a three-level reduction for acceptance of responsibility, resulting in a total offense level of fifteen. Since this was Carlson's first offense, his criminal history category was I. Given this offense level and criminal history category, Carlson faced a sentencing guidelines range of eighteen to twenty-four months' imprisonment, two to three years of supervised release, and a fine of $4,000 to $40,000.

At the sentencing hearing, Carlson asked the court to impose a sentence below the guidelines range, reasserting arguments proffered in an earlier motion. In

response, the government stated that, in the circumstances, it opposed any downward variance. The district court thereafter varied downward from the guidelines range and imposed the sentence described above. In doing so, the district court noted that five years' probation is the maximum that can be imposed, that 1,000 hours of community service is the most the court has ever imposed, and that the district court "accorded significant weight to the guidelines range and believes that the sentence imposed is no more severe than necessary to take into account the purpose of the guidelines." The district court stated that the "substantial variance here is supported by comparably extraordinary circumstances," and justified the variance on the basis that Carlson (1) has a significant record of charitable activities; (2) accepted responsibility and made an exceptional effort to repay the money; (3) suffered damage to his business, reputation, and family relationships; and (4) was not motivated by a desire to defraud the government, but was instead attempting to resolve a financial crisis within the business. In its statement of reasons, the district court also distinguished this case from our decision in United States v. Ture, 450 F.3d 352 (8th Cir. 2006).[1]

## II.

Neither party challenges the district court's calculation of the guidelines range. When there is no dispute on appeal about the applicable guidelines range, we review "[a] district court's decision to vary from the advisory sentencing Guidelines range . . . for reasonableness, which is a similar standard to the abuse of discretion standard."

---

[1]The defendant in Ture was convicted of willfully attempting to evade federal income tax and ultimately sentenced to two years' probation and 300 hours of community service, which amounted to a five-level reduction in his total offense level and a 100% variance from the guidelines range. United States v. Ture, 450 F.3d 352, 355 (8th Cir. 2006). On appeal, we concluded that the district court's sentence was unreasonable and remanded for resentencing. Id. at 359-60.

United States v. Pepper, 486 F.3d 408, 411 (8th Cir. 2007).[2] A sentence that varies from the guidelines range is reasonable "so long as the judge offers appropriate justification under the factors specified in Section 3553(a)," but "[t]he further the district court varies from the presumptively reasonable guideline range, the more compelling the justification based on the 3553(a) factors must be." United States v. Bryant, 446 F.3d 1317, 1319 (8th Cir. 2006). In addition, a sentence imposed outside the guidelines range

> may be unreasonable if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

United States v. Haack, 403 F.3d 997, 1004 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005). Our review of Carlson's sentence takes into account the fact that a variance

---

[2]Carlson asserts that the government did not properly preserve an objection to a below the guidelines sentence, limiting us to plain error review, because the government did not file a response to Carlson's motion for a sentence below the advisory guidelines range and because the government, at the sentencing hearing, stated only that, "for this crime, six years sustained pattern of stealing money from the IRS and the taxpayers, we stand by the guideline range to which we have stipulated and which was the result of substantial negotiations, and we respectfully oppose any downward departure or variance from the guideline range." We reject Carlson's assertion. As the government points out, the District of Minnesota's Local Rule 83.10, upon which Carlson relies on to assert that the government was required to file a response to his motion, prescribes the procedure used to resolve disputes concerning the content found in PSRs. Because such disputes are not present here, the local rule does not support Carlson's position. Furthermore, we conclude that the government's oral statement at sentencing was sufficient to apprise the district court of its position regarding a below the guidelines sentence and that the issue was thus preserved for appellate review.

from a guidelines sentencing range of imprisonment down to probation is not *per se* unreasonable. See United States v. Wadena, 470 F.3d 735, 738 (8th Cir. 2006).

The sentenced imposed upon Carlson in effect amounts to a 100% downward variance from the guidelines range and a seven-level reduction in Carlson's total offense level.[3] "'We have suggested that a variance to zero prison time where the Sentencing Commission has found that substantial prison time is indicated . . . requires extraordinary justification,'" United States v. Soperla, No. 06-3316, 2007 WL 2141678, at *3 (8th Cir. July 27, 2007) (quoting United States v. McDonald, 461 F.3d 948, 957 n.7 (8th Cir. 2006)), and "have routinely rejected this kind of variance as unreasonable." Id. at *4 (collecting cases). We similarly reject this variance here and conclude that the sentence is unreasonable because the district court, in formulating it, failed to accord significant weight to certain § 3553(a) factors and failed to articulate sufficiently compelling circumstances to justify such a large variance.

Section 3553(a) requires the district court to consider, among other things, the need for the sentence to promote respect for the law, to reflect the seriousness of the offense, and to provide just punishment. In Ture, we addressed these considerations and recognized that "'[t]ax offenses, in and of themselves, are serious offenses,'" and that "'a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one.'" Ture, 450 F.3d at 357-58 (alteration in original) (quoting United

---

[3]We reject Carlson's contention that his sentence to eight months of home confinement should be considered equivalent to eight months of imprisonment when determining the extent of a variance from the sentencing guidelines. Although United States Sentencing Guidelines § 5C1.1 provides that home confinement may be a substitute for imprisonment in some circumstances and that, in such a case, a day of home confinement is equivalent to a day of imprisonment, this substitute punishment is not permitted under the guidelines when the defendant's guideline range is in Zone D, as is the case here. See also United States v. Soperla, No. 06-3316, 2007 WL 2141678, at *4 (8th Cir. July 27, 2007).

States Sentencing Guidelines (U.S.S.G.) § 2T1.1, cmt. background). We also noted that "'criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system'" and that "'[c]riminal tax prosecutions serve to punish the violator and promote respect for the tax laws.'" Id. at 357 (quoting U.S.S.G. Manual ch. 2, pt. T, introductory cmt.). With these considerations in mind, we concluded in Ture that, given the duration of the defendant's criminal conduct (nearly four years), the amount of tax evaded ($240,252), and his enlistment of an employee to assist with the crime, "the District Court failed to adequately consider the seriousness of Ture's offense, the goal of promoting respect for our federal tax laws, and the need for a just sentence" when it imposed a sentence of two years' probation and 300 hours of community service, which amounted to a 100% downward variance from the guidelines range and a five-level reduction in the defendant's total offense level. Id. at 358. The sentence imposed here compels the same conclusion, particularly in light of the fact that, as compared to Ture, (1) Carlson evaded a significantly greater amount of tax ($561,223.76), (2) his criminal conduct extended for a longer duration (six years), and (3) he received a larger reduction in his total offense level (seven-level). Although Carlson did not enlist the help of an employee in committing his offense and received a longer term of probation, more hours of community service, and eight months of home confinement, we still conclude, as we did in Ture, that the district court failed to adequately consider the seriousness of Carlson's offense, the goal of promoting respect for our federal tax laws, and the need for a just sentence when formulating Carlson's sentence.

The district court's 100 % variance additionally demonstrates a failure to accord significant weight to the need for sentences to deter future criminal conduct. See 18 U.S.C. § 3553(a)(2) (2000). Terms of imprisonment are important "to deter others from stealing from the national purse." Ture, 450 F.3d at 358. This is particularly true in cases involving willful tax evasion, since that crime often goes undetected. Id. ("[W]illful tax evaders often go undetected such that those who are caught – especially those who are caught evading nearly a quarter-million dollars in tax – must

be given some term of imprisonment."). Although the district court noted that "[i]t is highly unlikely that Carlson will ever commit another crime," it did not address the sentence's effect of deterring others – an important consideration. See United States v. Miller, 484 F.3d 964, 967-68 (8th Cir. 2007) ("[G]eneral deterrence . . . is one of the key purposes of sentencing . . . ." (quotations omitted)) Because of the district court's failure to address the deterrence of others, the importance placed on imposing terms of imprisonment to deter future tax evaders, and the fact that Carlson received no term of imprisonment, we conclude that the district court failed to give the goal of deterrence adequate weight when formulating its sentence.

The district court further failed to adequately consider the need to avoid unwarranted sentencing disparities among similar defendants. 18 U.S.C. § 3553(a)(6). As we have noted, "[t]o reduce sentencing disparities, the Guidelines sought to ensure more tax evaders were sentenced to prison, specifically focusing on those who evaded more than $100,000 in federal taxes." Ture, 450 F.3d at 358-59. In Ture, where the defendant had a similar record (first offense) and had been found guilty of similar conduct (tax evasion), we reversed a 100%, five-offense-level variance. Id. at 354-55, 357-59. Here, the district court recognized the similarities between Carlson's case and Ture, noting that both involved first offenses, expressions of remorse, and cooperation with the prosecution, but then attempted to distinguish Carlson's sentence from the one in Ture on the basis that, unlike the defendant in Ture, Carlson had a significant record of charitable activities, had not enlisted an employee to assist in the crime, and was motivated to commit the crime because of a financial crisis, rather than personal gain. Although we acknowledge these differences, we do not believe that they are sufficient to justify the imposition of a 100% (seven-level) variance here when we reversed a 100% (five-level) variance in Ture, particularly given the number of similarities between the two cases and the fact that Carlson failed to remit almost twice as much in taxes for a longer period of time.

Finally, we conclude that the "extraordinary factors" relied on by the district court to justify its sentence are not sufficiently compelling to justify a 100% variance – a variance that, as we acknowledged above, requires "extraordinary justification." See Soperla, 2007 WL 2141678, at *3. Carlson's record of charitable activities is certainly commendable, as evidenced by the numerous letters that outlined his involvement in his community and church and the impact he has had on many lives. We do not believe, however, that it was extraordinary, especially in light of some of our other cases addressing the issue. *Compare* United States v. Morken, 133 F.3d 628, 630 (8th Cir. 1998) (concluding that a defendant's "record of good works is neither exceptional nor out of the ordinary" even though he advised local business owners, hired young people, served on his church council, raised money for charity, and was an accommodating neighbor and a good friend), *with* United States v. Woods, 159 F.3d 1132, 1136-37 (8th Cir. 1998) (upholding a one-level downward departure based on a defendant's exceptional charitable activity, which included bringing two troubled women into her own home, paying for these women to attend a private high school, and caring for an elderly friend who lived nearby). We similarly do not believe that Carlson's repayment of the unpaid taxes prior to entering his plea of guilty, or the efforts associated therewith, constitutes a sufficiently exceptional circumstance. The district court stated that "Carlson liquidated his family's assets so that he could fully repay the debt owed to the Internal Revenue Service," and then classified Carlson's repayment efforts, which included the withdrawal of $35,000 from his retirement account and the borrowing of $350,000 from two friends, as "truly exceptional efforts" that "equate[d] in the Court's view to extraordinary acceptance of responsibility." As the government points out, however, Carlson had already received a three-level downward departure for his acceptance of responsibility, and the only asset of Carlson's that was shown to have actually been liquidated was his retirement account. In addition, these repayment efforts, when compared to other cases, are not exceptionally compelling. See United States v. O'Malley, 364 F.3d 974, 981-82 (8th Cir. 2004) (concluding that the defendant's pre-sentencing repayment of the $459,047.02 he owed did not constitute extraordinary restitution sufficient to

-8-

justify a departure, even though the defendant "must have gone to great lengths" to come up with the money); United States v. Oligmueller, 198 F.3d 669, 672 (8th Cir. 1999) (upholding a one-level downward departure on the basis of the defendant's repayment efforts because the defendant, among other things, voluntarily began making restitution payments one year before he was indicted, worked hard to insure that his assets received the highest possible value, turned over his life insurance policy and wife's certificate of deposit, took up an outside job, and gave up his home).[4]

In support of its variance, the district court also stated that "Carlson's crime was not motivated by a desire to defraud and was not for personal gain," but that he was instead "motivated by a financial crisis and . . . acted to preserve subcontractors and others who were relying on him in his business." Although Carlson's purported intentions were arguably better than a defendant who uses the funds for purely personal reasons, we note that Carlson, as a fifty percent shareholder of Jyland, still benefitted personally from his failure to remit the payroll taxes and that he still defrauded the government by doing so. This rationale is consequently not particularly compelling. Nor is the damage Carlson has suffered to his business, family, and reputation – another consideration relied on by the district court. Although Carlson has certainly suffered such damage, it does not appear to be anything out of the ordinary for individuals convicted of such crimes.

For the foregoing reasons, we conclude that the circumstances present here do not justify the variance granted by the district court and that the sentence was therefore unreasonable in light of the relevant sentencing factors. Accordingly, we

---

[4]We recognize, as did the court in O'Malley, that placing too much weight on a defendant's ability to make restitution immediately works to "differentiate criminal defendants on the basis of their economic resources, which is clearly contrary to the intent of the sentencing guidelines." United States v. O'Malley, 364 F.3d 974, 981 (8th Cir. 2004).

vacate the sentence and remand for resentencing consistent with the views expressed in this opinion.

_____