# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-1938

_____

United States of America

*Plaintiff - Appellee*

v.

Melvin Stout

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: March 18, 2022
Filed: June 16, 2022
[Unpublished]

_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") provided government-guaranteed loans to small businesses during the COVID-19 pandemic. *See* Pub. L. 116-136, 134 Stat. 281 (2020). Between April and June of 2020, Melvin Stout, his wife, and his sister applied for and received multiple loans under the CARES Act, falsely representing that they owned various businesses.

They applied for fully forgivable loans under the Paycheck Protection Program, *see* 15 U.S.C. § 636(a)(36), and nonforgivable loans under the Economic Injury Disaster Loans ("EIDL") program, *see* § 636(b)(2). Stout would not have been required to start repaying nonforgivable EIDL loans until one year after the loans were made.

When questioned by law enforcement in September 2020, Stout admitted that he was the ringleader of the scheme and that he had engaged in fraudulent activity. In December, Stout pleaded guilty to making a false statement in violation of 18 U.S.C. § 1001(a)(3).

The district court[1] calculated an advisory sentencing guidelines range of 12 to 18 months' imprisonment followed by 1 to 3 years' supervised release. That range was based in part on the presentence investigation report's ("PSR") intended-loss calculation of $116,525.56, which resulted in an eight-level increase to Stout's base offense level. *See* U.S.S.G. § 2B1.1(b)(1)(E). Stout did not object to the enhancement. The district court imposed a sentence of 12 months and 1 day of imprisonment followed by 3 years of supervised release and $74,600 in restitution. Stout appeals, challenging the district court's loss calculation.

Where a defendant "failed to object at sentencing to the district court's loss calculation, we review it for plain error." *United States v. Callaway*, 762 F.3d 754, 759 (8th Cir. 2014). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." *United States v. Isler*, 983 F.3d 335, 341 (8th Cir. 2020). "If these three requirements are satisfied, we may correct the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Helper*, 7 F.4th 706, 711 (8th Cir. 2021). An error is "plain" only if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

Under the guidelines, a loss greater than $40,000 requires a six-level increase to the defendant's offense level, and a loss greater than $95,000 requires an eight-level increase. § 2B1.1(b)(1)(D)-(E). "[L]oss is the greater of actual loss or intended loss." § 2B1.1, Application Note 3(A). "Intended loss" means "the pecuniary harm that the defendant purposely sought to inflict" and "includes intended pecuniary harm that would have been impossible or unlikely to occur." § 2B1.1, Application Note 3(A)(ii). "Pecuniary harm" is defined as "harm that is monetary or that otherwise is readily measurable in money." § 2B1.1, Application Note 3(A)(iii). The district court's "loss determination is entitled to appropriate deference." § 2B1.1, Application Note 3(C).

Stout argues that the district court plainly erred by calculating the intended loss to be $116,525.56 and applying the corresponding increase to his base offense level. He claims that the intended loss should have been limited to the amount of the loans that was forgivable, which he states was "no more than $91,125.56." Stout asserts "there is no evidence that the defendants did not intend to repay the remaining balances" of the nonforgivable loans.

Stout relies primarily on *United States v. Oligmueller*, where we considered the calculation of the intended loss caused by a fraudulent loan application. 198 F.3d 669, 670-71 (8th Cir. 1999). In *Oligmueller*, a rancher secured a bank loan by misrepresenting the number of cattle he owned. *Id.* at 670. Once the fraud was discovered, he "made extraordinary efforts to insure [sic] that his debt was repaid to the bank," including liquidating his assets, "pledg[ing] assets not previously pledged to the bank, including his ranch, and work[ing] to prepare assets for sale so that the bank would receive the highest possible return." *Id.* The rancher also took a new job, set up a lawn mower repair business, and "turned over approximately half of his social security payment each month to pay his debts." *Id.* In less than two years, he had repaid approximately $836,000, bringing "the bank's loss down to approximately $58,000." *Id.* at 670-71. We rejected the Government's argument that the intended loss was $58,000, explaining that "the intended loss was zero" because there was "no evidence that, at the time of the fraudulent conduct, [the

-3-

defendant] intended to repay anything less than the full value of the loans." *Id.* at 671.

Here, the Government argues that *Oligmueller* is distinguishable because unlike the rancher in that case, Stout and his co-conspirators did not own any legitimate businesses, secured the loans by making multiple misrepresentations over the course of two months, and did nothing to repay the loans even after their fraud was discovered. We agree. Stout admitted that he perpetrated the fraud to "stay afloat" and move out of his mother's residence, which suggests that he was spending the loan money as he received it. Additionally, the PSR states that in 2021, Stout was charged in state court with stealing fifteen computers from a hospital where he worked between September 2019 and February 2020, and an investigation indicated that he and his wife had sold the computers to pawn shops. *See United States v. Smith*, 929 F.3d 545, 547 (8th Cir. 2019) (holding that the district court did not clearly err in counting a transaction as an intended loss where, "were there any doubt about [the defendant's] intentions, he fraudulently acquired other expensive items—including a house, office space, and several vehicles—through similar means").

Given that Stout's case is distinguishable from *Oligmueller*, the district court did not commit a "clear or obvious" error in finding that the amount of the nonforgivable loans was included in the intended loss. *See Puckett*, 556 U.S. at 135. Therefore, we affirm Stout's sentence.

_____