# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2535

_____

United States of America,       *
                                  *

         Plaintiff-Appellant,    *

                                  *   Appeal from the United States

    v.                        *   District Court for the

                                  *   District of Minnesota.

Darrell Eugene Wadena,      *

                                  *

         Defendant-Appellee.   *

_____

Submitted: November 14, 2006
Filed: December 7, 2006

_____

Before LOKEN, Chief Judge, LAY and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Darrell Eugene Wadena pled guilty to one count of conspiracy to commit mail fraud under 18 U.S.C. §§ 1341 and 1349. The district court[1] imposed a sentence of five years probation, a downward variance from Wadena's recommended sentencing range of eighteen to twenty-four months in prison under the advisory United States Sentencing Guidelines ("Guidelines" or "USSG"). The government appeals this sentence as unreasonable. We affirm the judgment of the district court.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

## I. BACKGROUND

Wadena is a member of the White Earth Band of Ojibwe Indians in Minnesota. Through an agreement with the state, the White Earth Band has the authority to issue vehicle titles. From 2002 to 2004, Wadena participated in a scheme whereby he obtained clean vehicle titles from the White Earth Band's titling office and sent them to Guillermo Gonzalez, a Florida used-car salesman. Gonzalez used the clean titles to sell salvage or junk automobiles that would normally require a brand on their titles to alert potential buyers of problems with their condition under both Florida and Minnesota law. Because Wadena provided clean titles for the vehicles, Gonzalez was able to sell them at prices substantially above their market value. Gonzalez's sales included some vehicles classified as "junk" and unsafe to drive; their only market value was for their parts. The government identified sixteen victims of this fraudulent scheme. One victim was in an accident in a junk vehicle and the air bags did not deploy; the government contends that she suffered back injuries as a result of the defects in the vehicle.

The district court found that Wadena's offense level under the Guidelines was fourteen, which included a three-point reduction for acceptance of responsibility. Wadena had a prior conviction for misapplication of tribal funds and money laundering in 1995 when he was chairman of the tribe, thus giving him a criminal history category of II under the Guidelines. Wadena's resulting Guidelines sentencing range was eighteen to twenty-four months in prison.

The district court varied from the Guidelines, relying upon the factors of 18 U.S.C. § 3553(a) to find that a sentence of five years probation plus restitution was reasonable under the circumstances. It noted that Wadena was sixty-seven years old at the time of sentencing and has several chronic health conditions, including hypertension, hearing loss, and cataracts. In addition, it was uncontested that Wadena has Type II diabetes and kidney disease, which recently worsened to the point where

Wadena requires three-hour dialysis treatments three times per week. Wadena also lives with an adopted adult son who suffers from fetal alcohol syndrome. Since the death of Wadena's wife in 2001, Wadena has been the son's sole caretaker. The district court also "[c]onsider[ed] other § 3553(a) factors" and found that a sentence of five years' probation plus restitution was "sufficient but not greater than necessary to impose upon [Wadena] the seriousness of the offense." It noted that the sentence "promotes respect for the law, provides just punishment for the offense, and affords adequate deterrence[,]" as well as providing Wadena "with needed medical care."

## II. DISCUSSION

In United States v. Booker, 543 U.S. 220, 244 (2005), the Supreme Court ruled that mandatory application of the Guidelines based on judicially-found facts violated defendants' Sixth Amendment rights. In the remedial portion of that opinion, the Court directed lower courts to determine the reasonableness of sentences by looking to the enumerated factors of § 3553(a). Id. at 261. Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed," taking into account "respect for the law," "just punishment for the offense," and the need for deterrence, public safety, and "to provide the defendant with needed . . . medical care . . . in the most effective manner"; (3) "the kinds of sentences available"; (4) the Guidelines sentence; (5) policy statements of the Sentencing Commission; (6) the avoidance of unwarranted sentencing disparity; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The parties do not contest the district court's calculation of the Guidelines sentencing range or its factual findings. Therefore, we review the district court's ultimate sentencing determination for reasonableness, which requires us to ask whether the district court abused its discretion. United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005). This review involves two questions: "whether the district

-3-

court's decision to grant a § 3553(a) variance from the appropriate guidelines range is reasonable, and whether the extent of any § 3553(a) variance . . . is reasonable." Id. In this case, the government takes issue only with the second question, the extent of the variance. As to that question, "the farther the district court varies from the presumptively reasonable guidelines range, the more compelling the justification based on the § 3553(a) factors must be." United States v. McMannus, 436 F.3d 871, 874 (8th Cir. 2006).

The government argues that the extent of the variance is unreasonable given the danger that Wadena's crimes posed to the public and the need to deter Wadena and others from similar crimes, particularly because of Wadena's prior conviction for fraudulent activity. Given these factors, the government contends that Wadena's medical problems and family responsibilities do not support a variance down to probation.

In support of this argument, it points to three cases where we ruled that sentences of probation were unreasonable when they resulted from variances below Guidelines ranges that called for imprisonment. See United States v. Medearis, 451 F.3d 918, 920 (8th Cir. 2006) (finding that a sentence of probation for a drug-related firearms offense despite a Guidelines sentencing range of forty-six to fifty-seven months in prison was unreasonable); United States v. Ture, 450 F.3d 352, 357 (8th Cir. 2006) (finding that a sentence of probation for tax evasion despite a Guidelines sentencing range of twelve to eighteen months in prison was unreasonable); United States v. Gall, 446 F.3d 884, 889 (8th Cir. 2006) (finding that a sentence of probation for a drug-trafficking offense despite a Guidelines sentencing range of thirty to thirty-seven months in prison was unreasonable). We further note that, after the parties filed their briefs in this case, we reversed another downward variance from a Guidelines range of imprisonment to probation. See United States v. Likens, 464 F.3d 823, 825-26 (8th Cir. 2006) (finding that a sentence of probation for drug-related firearms offenses despite a Guidelines sentencing range of fifteen to twenty-one months in

prison was unreasonable). The government essentially argues that this line of cases stands for the proposition that any variance from a Guidelines sentencing range of imprisonment down to probation is unreasonable.

Although all of these cases involved the reversal of downward variances that had resulted in probation when the Guidelines had called for imprisonment, they do not stand for a blanket rule that all such variances are unreasonable. Such a rule would amount to the judicial elimination of a sentencing option that would otherwise be available under federal criminal statutes that do not impose mandatory imprisonment, including the statute at issue in this case. This judicial rule would effectively require imprisonment for defendants whose offense level falls within Zone B or above within the sentencing table of the Guidelines. That kind of categorical, mandatory approach to sentencing on the basis of judicially-found facts is precisely the type of sentencing regime the Supreme Court rejected in Booker.

Instead, we must look to the facts of the above-cited cases to determine whether they control the outcome here. Examination reveals each of them to be distinguishable from the case at hand. In Medearis and Gall, the variances granted by the respective district courts were significantly greater than the variance at issue here because those defendants' Guidelines sentencing ranges were much longer than Wadena's. Thus, concerns over sentencing disparity and general deterrence played a significant role in finding those sentences unreasonable. See Medearis, 451 F.3d at 920-21; Gall, 446 F.3d at 890. Neither case presented a defendant with a serious medical condition, a defendant with a disabled, dependent son or daughter, or a situation with similarly compelling justifications for a variance.

The defendants in Ture and Likens did face Guidelines sentencing ranges similar to Wadena's, and the defendants in both of those cases had health problems that factored into the decisions to sentence them to probation. See Likens, 464 F.3d at 825 (stating that the district court noted that the defendant suffered from heart

disease, diabetes, and drug addiction); <u>Ture</u>, 450 F.3d at 355, 356 (stating that the district court noted that the defendant suffered from heart disease). Other factors distinguish these cases, however. There is no evidence in <u>Likens</u> and <u>Ture</u> that those defendants had medical needs as burdensome as Wadena's three dialysis treatments per week. In addition, neither Likens nor Ture were the sole caretakers of any dependents with the same kind of needs as Wadena's son, which are extensive due to the effects of fetal alcohol syndrome.

There were other factors weighing against downward variances in <u>Likens</u> and <u>Ture</u>, as well. Likens was convicted of being a felon in possession of a firearm and ammunition and a drug user in possession of a firearm, and we noted that both statutes "clearly express[]" the view of Congress regarding the need to "protect the public by keeping firearms out of the hands of those Congress considers to be potentially irresponsible and dangerous" or to have "violent tendencies." <u>Likens</u>, 464 F.3d at 826. Likens also testified falsely under oath after apprehension, an independent act warranting deterrence. <u>Id.</u> Ture was convicted of a "tremendous amount" of tax evasion over a long duration, and we noted that the Guidelines discuss the special need for deterrence in such cases "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations," and the special need for imprisonment to reduce significant sentencing disparity prior to the implementation of the Guidelines. <u>Ture</u>, 450 F.3d at 357-58 (quoting USSG § 2T, introductory cmt. and § 2T1.1, background cmt. (2005)).

Thus, while those cases are instructive precedent, they do not require us to find that this variance to probation was prohibited when the Guidelines called for imprisonment. We must therefore examine the various factors in this case to determine whether the extent of the downward variance was unreasonable. The variance was substantial in that it could ultimately result in no incarceration (presuming Wadena does not violate the terms of his probation) where the Guidelines called for at least eighteen months of imprisonment. Nevertheless, we ultimately find

that the sentence was reasonable because a number of factors, taken together, justify the district court's decision to sentence Wadena to five years' probation.

The district court cited relevant § 3553(a) factors that warranted this variance. It considered Wadena's characteristics—age, medical needs, and unique necessity as a care giver for his son—as strongly favoring a non-prison sentence. The government takes issue with the weight the district court placed upon those characteristics, first arguing that there was no showing that Wadena could not obtain dialysis treatments and other necessary medical care in prison. This argument misses the mark. The 2005 Guidelines, which the district court applied in this case, state that courts may consider departing downward to a non-prison sentence for an "infirm" defendant because "home confinement might be equally efficient as and less costly than incarceration." USSG § 5H1.1 (2005). While that section of the Guidelines does not apply directly to this case (because the district court chose to vary from the Guidelines rather than depart from them), the overarching policy contained in that language is clear: in some situations, a district court may impose a non-prison sentence when a defendant has serious medical needs. Section 3553(a)(5) directs the district court to consider the policies of the Sentencing Commission when determining a sentence, and § 3553(a)(2)(D) explicitly states that the effective provision of necessary medical care is an appropriate factor for the district court's consideration in sentencing. The district court had the discretion to decide that it would be more efficient and effective for Wadena to receive treatment from his current healthcare provider.

As to Wadena's family responsibilities, the government correctly notes that we "disfavor[]" sentencing leniency on this basis absent some showing that the defendant is a necessary care giver for a family member suffering from a severe disability or condition. United States v. Bueno, 443 F.3d 1017, 1023-24 (8th Cir. 2006). If Wadena's role in caring for his son was the sole ground for the downward variance, the district court's treatment of the issue might warrant further examination as to the son's condition and the necessity of Wadena's care giving. This was only one of

multiple grounds for the variance, however, and the district court did not abuse its discretion in giving it weight as a characteristic of Wadena's life under § 3553(a)(1).

Finally, other § 3553(a) factors do not weigh strongly against the variance in this case. The government argues that Wadena's prior conviction for a similar type of crime shows that he is likely to re-offend, and that a sentence of imprisonment would better protect the public and deter him from committing future crimes. Wadena's age and recent deterioration in his health reduce the risk of re-offending, however, as do the terms of his probation. Aside from the standard conditions of probation, Wadena must make all his financial information available to his probation officer upon request, and he cannot obtain any lines of credit or use a credit card without the approval of that officer. General deterrence and the dangers of sentencing disparity are concerns, but we believe the district court pointed out a combination of characteristics and circumstances sufficiently unique to this defendant that this case does not "beg[] the question of who gets prison if [this defendant] does not." Ture, 450 F.3d at 358. Accordingly, the district court did not abuse its discretion in sentencing Wadena to five-year term of probation.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____