# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3294

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Thomas M. Coughlin, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: April 12, 2007
Filed: August 28, 2007

———————

Before LOKEN, Chief Judge, BYE and RILEY, Circuit Judges.

———————

RILEY, Circuit Judge.

Thomas Coughlin (Coughlin), a successful and prominent corporate executive, pled guilty to six felony counts: five counts of aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and one count of filing false tax returns, in violation of 26 U.S.C. § 7206(1). After properly calculating an advisory United States Sentencing Guidelines range of 27 to 33 months' imprisonment, the district court departed and varied downward eight levels, sentencing Coughlin to no imprisonment, 5 years' probation under 18 U.S.C. § 3561(c)(1) of which 27 months is home detention, a $50,000 fine, and $411,218 in restitution. The government appeals. We reverse and remand.

## I.    BACKGROUND

From January 1997 to October 2001, Coughlin was Wal-Mart Stores, Inc.'s (Wal-Mart) Chief Operating Officer and then Wal-Mart's Executive Vice President and Vice Chairman of the Board of Directors. During this period, Coughlin defrauded Wal-Mart by (1) directing that Wal-Mart employees' travel vouchers be falsely adjusted to request unwarranted reimbursements, which were then converted into cash and pocketed by Coughlin; (2) falsifying invoices so Wal-Mart paid Coughlin's personal expenses; (3) altering Wal-Mart employees' expense vouchers to include fictitious expenses, which were then converted into cash and pocketed by Coughlin; (4) using large quantities of Wal-Mart gift cards for personal use; and (5) looting audio equipment and cameras using Wal-Mart's Merchandise Transfer Report.

The United States Probation Office prepared a presentence investigation report (PSR). The PSR set Coughlin's base offense level at 6 and, due to the amount of the loss, increased Coughlin's offense level by 9 levels. See U.S.S.G. § 2F1.1(a), (b)(1)(J).[1] The PSR increased Coughlin's offense level by 2 levels because the offense involved more than minimal planning, see id. § 2F1.1(b)(2)(A), by 2 levels because Coughlin was the organizer of the criminal activity, see id. § 3B1.1(c), and by 2 levels because Coughlin abused a position of trust, see id. § 3B1.3. Coughlin's adjusted offense level was 21. The PSR reduced Coughlin's offense level by 3 levels for acceptance of responsibility. See id. § 3E1.1. Coughlin's total offense level was 18, and Coughlin had a criminal history category I, resulting in an advisory Guidelines sentencing range of 27 to 33 months' imprisonment.

At sentencing, the government and Coughlin stipulated the PSR properly calculated Coughlin's advisory Guidelines sentencing range, and the court accepted the PSR's calculation. The issues at sentencing were a departure based on Coughlin's

---

[1]All citations to the Guidelines are to the 2000 version. See generally United States v. Carter, 490 F.3d 641, 643 (8th Cir. 2007).

health pursuant to Guideline § 5H1.4 and a variance based on the factors set forth at 18 U.S.C. § 3553(a).

Coughlin is in poor health. The record reflects Coughlin is six feet four inches tall and weighs about 330 pounds. Coughlin survived sudden cardiac death and has had an implantable cardioverter defibrillator since 2003. Coughlin presently suffers from cardiac arrhythmia, severe pulmonary hypertension, double vessel coronary atherosclerosis, type II diabetes, gout, ethmoid sinusitis, obesity, high blood pressure, severe allergies, and back and knee pain. Couglin also suffers from severe obstructive sleep apnea, which necessitates the use of a continuous positive airway pressure machine at night to prevent a dangerous drop in Coughlin's oxygen levels. Doctors have ordered Coughlin to control his weight and blood pressure since at least 1980, yet these warnings have generally gone unheeded.

Dr. Joel Carver (Dr. Carver), Coughlin's treating physician, testified with a reasonable degree of medical certainty (1) sending Coughlin to prison would increase Coughlin's stress level and significantly increase the risk of another heart attack; (2) Coughlin regularly took thirteen different medications, two of which Dr. Carver understood are not available through the Bureau of Prisons (BOP); and (3) Coughlin's medications should not be changed. Dr. Carver has never visited a BOP facility and conceded he has no knowledge regarding how the BOP operates or treats the inmates medically, or even what medical capabilities exist within the BOP.[2] Dr. Carver was asked on direct examination whether Coughlin could survive in the BOP, and Dr. Carver stated, "[it] honestly would be hard for me to speculate." According to Dr. Carver, his medical opinion about Coughlin and the BOP is "[j]ust based on common sense."

---

[2]Dr. Carver relied upon a letter written by Phillip Wise (Wise), which discussed the conditions within the BOP in general. Dr. Carver did not know Wise's credentials.

Dr. Tecora Ballom (Dr. Ballom), the Clinical Consultant for the South Central Region and Acting Clinical Director at the Federal Medical Center located at Carswell, Texas, testified the BOP would review and assess Coughlin's medical history and treat him appropriately. The BOP classifies inmates according to their medical needs. Level one usually includes healthy patients with uncomplicated diseases who can perform the activities of daily living. Level two includes patients with chronic diseases who require more frequent monitoring. Level-three patients may not be able to perform all of the activities of daily living, require even more frequent monitoring, and are housed in a community with access to medical resources. Level-four patients have the most difficulty with daily living, require monitoring up to twenty-four hours a day, and are housed at medical referral centers.

Dr. Ballom testified Coughlin probably would be classified as a level-three patient (or possibly as a level-four patient), which would include access to medical treatment for patients with pacemakers and defibrillators and availability to a continuous positive airway pressure machine at night. Dr. Ballom discussed the procedure by which Coughlin could continue to take his current medications that are not typically available through the BOP. Dr. Ballom testified the BOP could help Coughlin cope with any increase in stress by using medical monitoring and possibly psychological or psychiatric consultations. Dr. Ballom noted Dr. Carver's testimony concerning an increase in stress appeared to assume Coughlin would be housed at a level one or two prison from a camp situation to a maximum-security penitentiary rather than at a dormitory-style facility. Dr. Ballom also testified Coughlin's health conditions might improve because Coughlin would be in a controlled environment.

The district court agreed with Dr. Ballom and found "[Coughlin] is at a very high risk. And [the court is] equating that to an extraordinary physical impairment and, therefore, under [Guideline §] 5H1.4, [the court finds] that there should be a downward departure . . . by a level of eight." This resulted in an adjusted total offense level of 10 and an advisory Guidelines sentencing range of 6 to 12 months'

imprisonment. The district court further observed, in addition to a downward departure under Guideline § 5H1.4, Coughlin could be entitled to a downward departure under Guideline §§ 5H1.6 (concerning family ties and responsibilities as well as community ties), 5H1.11 (concerning charitable and employment-related contributions as well as prior good works), and 5K2.0 (concerning grounds for a departure not otherwise considered in the Guidelines). The district court declined to grant a further downward departure on these grounds because "the reduction given under [Guideline § 5H1.4] is appropriate." The court sentenced Coughlin to no imprisonment, 5 years' probation of which 27 months is home detention, a $50,000 fine, and $411,218 in restitution. In the alternative, if our court ruled on appeal that the district court abused its discretion in departing downward pursuant to Guideline § 5H1.4, the district court imposed an identical sentence as a non-Guidelines sentence, adopting the previous findings for a § 3553(a) analysis. The district court concluded "home detention with electronic monitoring is going to be in [Coughlin's] best interests." This appeal followed.

## II.    DISCUSSION

After United States v. Booker, 543 U.S. 220 (2005), the sentencing court first must calculate the advisory Guidelines sentencing range. See United States v. Ture, 450 F.3d 352, 356 (8th Cir. 2006). Next, the sentencing court must decide whether a traditional departure from the advisory Guidelines sentencing range is appropriate based either on Parts H or K of Chapter Five of the Guidelines, policy statements, or commentary. See United States v. Dalton, 478 F.3d 879, 881 (8th Cir. 2007). The sentencing court has then arrived at a final advisory Guidelines sentencing range. Id. Then, the sentencing court must consider the factors set forth at 18 U.S.C. § 3553(a) to determine whether to impose a sentence within or without the final advisory Guidelines sentencing range. See id.; United States v. Rouillard, 474 F.3d 551, 555 (8th Cir. 2007). The sentencing court must impose a sentence tailored to the § 3553(a) factors. See Booker, 543 U.S. at 245-46. On appeal, we address the reasonableness

or unreasonableness of the sentence.  See Rita v. United States, 551 U.S. ___, 127 S. Ct. 2456, 2465 (2007); Booker, 543 U.S. at 261.

### A.     Physical Condition Departure

The first issue before the court is the propriety of the district court's downward departure pursuant to Guideline § 5H1.4.  We review for abuse of discretion departures from the Guidelines, Rouillard, 474 F.3d at 555, and review for clear error the district court's factual finding that Coughlin suffers an extraordinary physical impairment, see United States v. Robinson, 409 F.3d 979, 981 (8th Cir. 2005).  If an appellate court "is left with the definite and firm conviction that a mistake has been committed," then a factual finding is clearly erroneous even if some evidence supports the factual finding.  Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

Guideline § 5H1.4 permits a downward departure based on a defendant's "extraordinary physical impairment."[3]  A departure based on a physical condition is a discouraged ground on which to depart and should be limited to exceptional circumstances.  See Koon v. United States, 518 U.S. 81, 95-96 (1996); United States v. Johnson, 318 F.3d 821, 823-24 (8th Cir. 2003), vacated on other grounds, 416 F.3d 884 (8th Cir. 2005).  A defendant's physical condition must be "assessed in the light of the situation the defendant would encounter while imprisoned."  Johnson, 318 F.3d at 826.  To determine if an extraordinary physical impairment exists, we ask three questions.  First, "[i]s the particular defendant's physical condition such that he or she

---

[3]Guideline § 5H1.4, in relevant part, provides:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.  However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

-6-

would find imprisonment more than the normal hardship?" United States v. Rabins, 63 F.3d 721, 729 (8th Cir. 1995). Second, "[w]ould imprisonment subject him or her to more than the normal inconvenience or danger?" Id. Specifically, would imprisonment worsen his or her condition or does he or she require special care not provided by the BOP? Id. at 728; accord Robinson, 409 F.3d at 981; Johnson, 318 F.3d at 826. Third, "[d]oes the physical condition have any substantial present effect on the defendant's ability to function?" Rabins, 63 F.3d at 729.

The first and third questions are not in dispute; thus, we will focus on the second question. Coughlin's only evidence regarding how imprisonment would affect Coughlin's health is Dr. Carver's testimony that life in prison is more stressful than life outside of prison and Coughlin should avoid stress. Dr. Carver has never visited a BOP facility. Dr. Carver conceded he had no personal knowledge of prison conditions or where Coughlin would be housed within the BOP, nor does Dr. Carver have specific knowledge regarding the accompanying stress level. "Common sense" was the basis for Dr. Carver's opinion. In contrast, Dr. Ballom's testimony was based on her considerable personal experiences with the BOP. Dr. Ballom commented that while life in prison may be stressful, the BOP has the capability to help inmates cope with stress. Furthermore, Dr. Ballom stated a controlled environment helps many inmates control and manage their health problems and the BOP will provide Coughlin with any medication or other necessary medical care. The record, omitting conjecture, does not show Coughlin's condition will worsen in a BOP facility or that Coughlin requires special care the BOP cannot provide, that is, the record does not establish imprisonment would subject Coughlin to more than the normal inconvenience or danger.

Coughlin relies on United States v. Wadena, 470 F.3d 735 (8th Cir. 2006), where this court affirmed a sentence of 5 years' probation based in part on the defendant's poor health. In Wadena, the defendant had a worsening kidney disease, which required three-hour dialysis treatments three times a week. Id. at 737. Here,

Coughlin's health ailments were not as severe as Wadena's ailments. On this record, the district court clearly erred in finding Coughlin suffers an extraordinary physical impairment and abused its discretion by departing downward eight levels pursuant to Guideline § 5H1.4. The no imprisonment sentence is not supported by the record.

### B.    Non-Guidelines Sentence

In the event our court concluded the district court abused its discretion in departing downward pursuant to Guideline § 5H1.4, the district court imposed the same sentence as a non-Guidelines sentence based on (1) Coughlin's family ties and responsibilities, as well as community ties; (2) Coughlin's charitable and employment-related contributions, as well as prior good works; and (3) other factors not otherwise considered in the Guidelines, such as Coughlin's "fall from grace."[4] Although the district court identified certain factors that could in the abstract support the imposition of a non-Guidelines sentence, the district court failed to consider these factors in the context of § 3553(a). Under § 3553(a), in imposing a non-Guidelines sentence, the district court must also consider the seriousness of the offense, promotion of respect for the law, just punishment, adequate deterrence, protection of the public from further crimes, and the avoidance of unwarranted sentencing disparities. Perhaps Coughlin's family ties and station in the community, as well as his lofty corporate position of trust and power, exacerbate the nature of his crimes, especially for Coughlin's victims: Wal-Mart, and more generally, American businesses. The record does not reflect the district court ever weighed both the aggravating and the mitigating nature of

---

[4]All of the grounds discussed by the district court in support of a non-Guidelines sentence are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. §§ 5H1.6, 5H1.11; see also id. § 5K2.0 (stating if "an offender characteristic or other circumstances" is "not ordinarily relevant," the characteristic or circumstance may be a ground for a departure "if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines").

Coughlin's conduct upon his family and community, Coughlin's position with Wal-Mart, and the other relevant factors in § 3553(a).

Section 3553(c)(2) of Title 18, United States Code, requires the sentencing court to state with specificity the reasons for the imposition of a non-Guidelines sentence. See United States v. Paz, 411 F.3d 906, 911 (8th Cir. 2005). Section 3553(c)(2) specifically informs "the parties of the reasons for a particular sentence outside of the guidelines range," aids the appellate court in reviewing a Guidelines departure or non-Guidelines sentence, and assists "the Sentencing Commission in collecting sentencing data and in maintaining a comprehensive database on all federal sentences." Id. Here, the district court did not state the reasons with sufficient specificity for the non-Guidelines sentence, especially considering the factors relied upon by the district court (1) are ordinarily not relevant in determining a sentence and are discouraged grounds for the imposition of a non-Guidelines sentence; (2) were not weighed against the negative impact Coughlin's crimes had on his family, community, and employer; and (3) were not balanced with the other considerations in § 3553(a)(1), (2), and (3).

## III.   CONCLUSION

For the foregoing reasons, we must remand for resentencing. Cf. United States v. Peterson, 455 F.3d 834, 837-38 (8th Cir. 2006). The district court's eight level departure or variance, based on this record, does not fall within the range of reasonableness. We reverse Coughlin's sentence and remand for further proceedings consistent with this opinion.[5] Both the government and Coughlin should have an

---

[5]The district court found Coughlin did not have the ability to pay interest and waived interest on Coughlin's fine and restitution. The PSR calculated Coughlin's net worth to be in excess of $50 million. The district court plainly erred by concluding Coughlin did not have the ability to pay interest and on remand should reconsider Coughlin's ability to pay interest. See United States v. Carter, 481 F.3d 601, 608 n.5 (8th Cir. 2007).

opportunity to supplement the sentencing record with additional evidence and argument on these resentencing issues, if either desires to do so.

BYE, Circuit Judge, dissenting.

The district court did not err when it found Coughlin suffers from an extraordinary physical impairment. The district court did not abuse its discretion when it determined it was appropriate to downward depart, pursuant to U.S.S.G. § 5H1.4. Furthermore, a sentence of five years probation with twenty-seven months of home detention, a $50,000 fine, and $411,218 in restitution is not unreasonable.

**A**

Whether Coughlin has an extraordinary physical impairment for the purpose of a § 5H1.4 departure is a question of fact we review for clear error. United States v. Rabins, 63 F.3d 721, 728-29 (8th Cir. 1995). The district court must ask three questions when determining whether a defendant has an extraordinary physical impairment: (1) whether the defendant's physical condition is such that the defendant would find imprisonment more than the normal hardship; (2) whether imprisonment would subject the defendant to more than the normal inconvenience or danger; and (3) whether the defendant's physical condition has any substantial present effect on the defendant's ability to function. United States v. Johnson, 318 F.3d 821, 825 (8th Cir. 2003) (citing Rabins, 63 F.3d at 729).

As the majority indicates, the first and third questions are not in dispute. Both the BOP expert, Dr. Ballom, and Coughlin's expert, Dr. Carver, agree Coughlin is "at very high risk cardiac and pulmonary wise." Dr. Ballom testified Coughlin is in the highest risk category, his condition being more than serious. Both medical experts agree, Coughlin's physical condition has a substantial present effect on his ability to function and will cause Coughlin to find imprisonment more than the normal hardship.

-10-

The majority concludes the record does not establish imprisonment would subject Coughlin to more than the normal inconvenience or danger, and holds the district court clearly erred when it so found. I disagree. Dr. Carver, a respected cardiologist whose credentials the government does not dispute, testified unequivocally Coughlin meets every one of the Rabins factors for an extraordinary medical impairment.

Coughlin has an unusual heart condition in that he has suffered multiple life-threatening cardiac episodes as a result of stress. The majority incorrectly concludes, however, Coughlin's only evidence regarding how imprisonment would adversely affect his health is Dr. Carver's testimony that life in prison is more stressful than life outside of prison. While the record does detail how strip searches, the risk of physical assault from younger aggressive inmates, overcrowding, sleep disturbance, unnerving noise, the threat of disciplinary sanctions, separation from loved ones, and limited access to health care would likely elevate Coughlin's stress to dangerous levels,[6] life-endangering stress is not the only adverse medical consequence that could result from Coughlin's incarceration.

Dr. Carver testified specifically, "incarceration would place [Coughlin] in a position of danger" and may well cause his death. First, Dr. Carver testified a change in Coughlin's prescription regime would be very detrimental to his physical condition. Dr. Ballom admitted during her testimony she could not guarantee Coughlin would

---

[6]Dr. Carver relied on the report of Phillip S. Wise, Assistant Director of BOP (retired), which described in detail the situations listed above as prison realities that would likely produce stress in older inmates; in her testimony, Dr. Ballom conceded the same. Despite the majority's assertion, Dr. Carver did not base his medical opinion about Coughlin's health in the BOP only on "common sense." Dr. Carver consulted Wise – both through Wise's written report and through a telephone conversation – on issues of prison environment, the National Formulary, and Coughlin's necessary medical equipment.

receive his currently prescribed drugs.[7]  Second, Dr. Ballom admitted she does not know whether Coughlin will be assigned to a level-three or level-four detention facility, and cannot say how far from a hospital Coughlin will be housed.  Third, the record does not show Coughlin will have adequate cardiac monitoring at the BOP facility to which he is assigned.  Dr. Ballom testified she did not know how often a cardiologist would visit and admitted there was at least one period of a year when patients at a level-four facility were denied access to a specialist because the detention facility did not have such a consulting specialist.  Fourth, the record shows Coughlin's life depends on complicated medical equipment and, in the event of an emergency, Dr. Ballom conceded Coughlin would be reliant on the ability of ordinary prison staff to quickly notice and notify a doctor or emergency response team.[8]

The government argues if we grant Coughlin a downward departure based on an extraordinary medical impairment, it will open the floodgates for everyone to argue prison is too stressful.  In other words, it asks, who will go to prison if Coughlin does not?  The framing of this argument minimizes the gravity of Coughlin's medical condition.  The record is replete with evidence of Coughlin's – in the words of the government's own expert – "very high risk" condition.  A respected cardiologist testified, and four to five inches of medical records confirmed, incarceration would "significantly increase [Coughlin's] risk of another heart attack or death" and "place

---

[7]Dr. Ballom testified Coughlin would have to seek approval for six of his medications, because they are not on the National Formulary.  She testified each approval process could take up to a week, and up to thirty percent of patient requests for such medications are denied.

[8]Furthermore, the record shows the district court considered the costs associated with housing and medicating Coughlin when it asked Dr. Ballom directly about each of these expenses, which are relevant considerations under the Guidelines ("E.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and *less costly* than, imprisonment." (emphasis added)).

him in a position of danger." In light of the overwhelming medical evidence in this case, a more prescient concern is who will be *granted* a departure for an extraordinary physical impairment if *not* Coughlin? Indeed, the district court wondered, "why even have a provision in the Guidelines [] that it can be departed from if you can show an extraordinary physical impairment if the Bureau of Prisons takes the [] stance we can treat everybody and can and will and provide good care?"

In my judgment, the district court did not clearly err when it concluded imprisonment would subject Coughlin to more than the normal inconvenience or danger and ruled Coughlin has an extraordinary physical impairment. Furthermore, the district court departed downward only to the extent needed to allow it to substitute home detention for incarceration. The district court's decision to impose twenty-seven months of home detention, instead of the six to twelve months prescribed for an offense level of ten, further satisfies me that the court did not abuse its discretion in sentencing Coughlin.

**B**

Section 3553(a) requires a district court to "impose a sentence no greater than necessary to account for the nature and seriousness of the offense and the defendant's history and characteristics, as well as to provide just punishment, to protect the public, and to avoid unwanted sentencing disparities." United States v. Tabor, 439 F.3d 826, 831 (8th Cir. 2006). This court recognizes "[s]entences varying from the guidelines range . . . are reasonable so long as the judge offers appropriate justification under the factors specified in 18 U.S.C. § 3553(a)." United States v. Lazenby, 439 F.3d 928, 932 (8th Cir. 2006) (citation and quotations omitted).

The variance in this case is substantial in that it resulted in no incarceration where the Guidelines called for at least twenty-seven months imprisonment. Nevertheless, I find the sentence was reasonable because the district court offered

appropriate justification, taking into account the 18 U.S.C. § 3553(a) factors when deciding to substitute home detention for incarceration.

The district court believed the circumstances of Coughlin's case were extraordinary, describing it as "the most unusual case that this Court's handled or probably ever will handle," and felt strongly home detention was the appropriate sentence for Coughlin.[9] The district court stated, "even if I'm incorrect in what I have determined about 5H1.4 and my comments concerning 5H1.6, 1.11, and 5K.2, I restate and adopt all of my findings under 3553 [(a)] and make them my factors in imposing a reasonable sentence on Coughlin." The majority claims this statement shows the district court alternatively relied on factors set forth in §§ 5H1.6 and 5H1.11, which are ordinarily not relevant in determining a departure.[10] On the contrary, the court did *not* state it would rely on §§ 5H1.6, 5H1.11 and 5K2.0 for a downward departure, in the event its § 5H1.4 finding was found to be incorrect. Instead, the court stated it would impose a *variance*, relying on 18 U.S.C. § 3553 (a) and the mandate that its sentence be reasonable.

The majority claims the district court did not state with enough specificity its reasons for the imposition of a non-guidelines sentence and did not properly balance the considerations of 18 U.S.C. § 3553(a). I disagree. This court "do[es] not require

---

[9]The district court actively participated in the questioning of the experts, indicating concern for Coughlin's safety. The court asked Dr. Ballom if she would be involved in determining in which facility Coughlin would be placed, indicating it was concerned prisoners may not always be placed in appropriate facilities.

[10]The majority misinterprets the district court. The district court stated specifically it was not granting a departure based on §§ 5H1.6 and 5H1.11 factors, though it noted Coughlin may qualify for the departure under the § 5K2.0(c) exception. Section 5K2.0(c) allows the consideration of characteristics or other circumstances, even if not ordinarily relevant to a determination of whether a departure is warranted, if such characteristics or circumstances are present to a substantial degree, and if taken together they make the case an exceptional one.

district courts to make 'robotic incantations' that each § 3553(a) factor has been considered." United States v. McMannus, 436 F.3d 871, 874 (8th Cir. 2006) (citing United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005)). Where a matter is conceptually simple and the record makes clear the sentencing judge considered the evidence and arguments, the law does not require a judge to write extensively about the reasons for its imposition of a particular sentence. Rita v. United States, 127 S. Ct. 2456, 2469 (2006). The law leaves much to the professional judgment of a judge to decide, under the circumstances, the appropriateness of brevity or length, conciseness or detail, in delivering its explanation. Id. at 2468.

In this case, the record shows the district court considered: (1) the extraordinary need to provide the defendant with adequate medical care;[11] (2) the exemplary citizenship of the defendant measured by his history of good civic and charitable contributions as well as public service;[12] (3) the importance of adequate deterrence, acknowledging the "worldwide exposure and ridicule" the defendant had already experienced;[13] (4) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, taking into account the defendant has admitted responsibility and faces substantial civil liability and other financial consequences as a result of his crime;[14] and (5) the need to provide restitution to the victims, by ordering the defendant pay full restitution.[15]

---

[11]18 U.S.C. § 3553(a)(2)(D).

[12]18 U.S.C. § 3553(a)(1).

[13]18 U.S.C. § 3553(a)(2)(B).

[14]18 U.S.C. § 3553(a)(2)(A).

[15]18 U.S.C. § 3553(a)(7).

Furthermore, the district court carefully considered the advisory Guidelines sentencing range of twenty-seven to thirty-three months imprisonment.[16] By imposing a sentence of five years probation, with twenty-seven months of home detention, the district court imposed the length of sentence prescribed by the Guidelines; the district court varied only in its substitution of home detention for incarceration.

Sentencing courts have the unique ability to appraise the evidence and personally assess a defendant. The district court had the discretion to decide it would be more efficient, effective and less costly for Coughlin to receive treatment from his current physician and serve his sentence at home. The other § 3553(a) factors do not weigh strongly against the variance in this case, and some support the variance. Our court's obligation is to give the district court's determination the same amount of deference whether the resulting sentence is greater than, or less than, the guidelines range. Given the district court's careful consideration of the evidence and arguments contained in this full record, I do not find the court abused its discretion in imposing a sentence of home detention rather than incarceration. I would therefore affirm.

For the above reasons, I dissent.

_____

---

[16]18 U.S.C. § 3553(a)(4).