# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-2585/2586

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeals from the United States |
| v. | * District Court for the |
| | * Western District of Missouri. |
| Robert Ray Charles, | * |
| | * |
| Appellant. | * |

_____

Submitted: February 12, 2008
Filed: July 7, 2008

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Robert Ray Charles appeals the district court's[1] revocation of his supervised release. The district court found that Charles violated two conditions of his supervised release, revoked his release status, and sentenced him to two consecutive 24-month terms of imprisonment. Charles argues that his supervised release should not have been revoked because the evidence used against him was obtained illegally. He also argues that his sentence is unreasonable based on changes in the Guidelines and his health. We affirm.

_____

[1]The Honorable Ortie D. Smith, United States District Judge for the Western District of Missouri.

## I. *Background*

On December 1, 2006, Charles completed his prison sentence for his felon-in-possession-of-a-firearm and escape-from-custody convictions and began serving his concurrent three-year terms of supervised release. On May 8, 2007, Charles's probation officer searched Charles's home, pursuant to a condition of Charles's supervision, and found several forged checks, a debit card that was not in Charles's name, an identification card under a fake name with Charles's picture, various social security cards, two letters from federal inmates, and other miscellaneous items. One of the inmate letters discussed name changes and credit files and the other mentioned knowing someone with credit card numbers. Charles did not have permission from his probation officer to correspond with these inmates.

On May 17, 2007, Charles's probation officer moved to revoke Charles's supervised release, contending that Charles had violated the conditions of his supervised release by committing new violations of the law and associating with convicted felons without permission. The district court found that Charles violated the two conditions and that revocation was appropriate.

During the sentencing phase of the revocation proceedings, the government requested that the court impose two consecutive 24-month sentences. Charles asked for leniency based on the state of his health[2] and requested that the sentences be served concurrently. The district court sentenced Charles to 24 months on each count and set the sentences to run consecutively.

## II. *Discussion*

Charles appeals the revocation of supervised release and his sentence, arguing that: (1) the evidence used to revoke his sentence was obtained illegally and should

---

[2]The record does not specify the exact nature of Charles's health concerns, but at the revocation hearing, Charles indicated that he suffers from sleep apnea, congestive heart failure, and seizures.

have been suppressed; (2) recent changes in the Guidelines warrant a reversal of his sentence; and (3) the sentence is unreasonable given his health and the nature of his violation.

A. *Revocation of Supervised Release*

Charles asserts that the district court relied upon inadmissible evidence and thus erred in revoking his supervised release. Specifically, Charles contends the evidence used against him was obtained in violation of the Fourth Amendment and should have been suppressed.

We review revocation of supervised release for abuse of discretion. *United States v. Meyer*, 483 F.3d 865, 868 (8th Cir. 2007). "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *United States v. Aguilera*, 523 F.3d 876, 877 (8th Cir. 2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)). To revoke a defendant's supervised release, the government need only provide enough evidence to convince the district court that the defendant has not met one or more conditions of supervised release. *Meyer*, 483 F.3d at 868.

We note that Charles did not raise a Fourth Amendment argument below. Nonetheless, assuming that Charles's Fourth Amendment argument is not waived by his failure to raise this argument before the district court or assert it in his opening brief, *United States v. Chippas*, 942 F.2d 498, 500 (8th Cir. 1991) (stating that we generally do not consider arguments not raised below and that issues raised for the first time in a reply brief are not properly before the court), we conclude that this argument is without merit. Whether evidence was obtained in violation of the Fourth Amendment to revoke Charles's supervised release is immaterial as the exclusionary rule generally does not apply in revocation of supervised release proceedings. *Bradley v. Fairfax*, 634 F.2d 1126, 1132 (8th Cir. 1980); *see also United States v. Archambeau*, 163 F.3d 603, *1 (8th Cir. 1998) (unpublished) (stating "[the]

exclusionary rule, absent showing of harassment, does not apply at revocation-of-supervised-release hearings) (quoting *United States v. Montez*, 952 F.2d 854, 857–58 (5th Cir. 1992)). Here, there is no evidence nor allegation of harassment, and the exclusionary rule is therefore inapplicable.[3]

### B. *Charles's Revocation Sentence*

Charles next argues that his sentence is unreasonable, claiming that the district court did not adequately consider his health condition and that recent changes in the Sentencing Guidelines warrant a reduction in his sentence.

We review a sentence imposed by the district court for an abuse of discretion, and our review is limited to determining whether the sentence is unreasonable. *United States v. Tyson*, 413 F.3d 824, 825 (8th Cir. 2005); *see also Gall v. United States*, 128 S. Ct. 586, 594 (2007) (stating that "appellate review of sentencing decisions is limited to determining whether they are 'reasonable'"). A court abuses its discretion and imposes an unreasonable sentence when it "fails to consider a relevant factor that should have received significant weight; . . . gives significant weight to an improper or irrelevant factor; or . . . considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Rouillard*, 474 F.3d 551, 556 (8th Cir. 2007) (quoting *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005)). "[T]he court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Id*. (quoting *Haack*, 403 F.3d at 1004). Following the revocation of supervised release, the district court has the discretion to "require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense." *United States v. Ahlemeier*, 391 F.3d 915, 919 (8th Cir. 2004) (quoting 18 U.S.C. § 3583(e)(3)). In determining an appropriate sentence, the district court must consider

---

[3]Because we conclude that the exclusionary rule is not applicable in these proceedings, we express no opinion regarding the constitutionality of the search of Charles's home.

the factors listed in 18 U.S.C. § 3553(a). *United States v. White Face*, 383 F.3d 733, 737 (8th Cir. 2004).

### 1. *Variance Based on Health Concerns*

Charles argues that the district court, in its consideration of the § 3553(a) factors, placed, great weight on his criminal history and did not adequately consider his health. We conclude that the district court did not err in assessing the § 3553(a) factors. Charles's long criminal history and the need for the sentence to promote respect for the law and protect the public from further crimes of the defendant justify the sentence imposed. *See* 18 U.S.C. § 3553(a).

Charles's health can be a factor to consider in imposing a reasonable sentence. *See* U.S.S.G. § 5H1.4 (allowing for a downward departure where the defendant has "an extraordinary physical impairment"). But, Charles does not show that the district court failed to take his physical condition into account or that his physical condition mandated a variance. *See United States v. Coughlin*, 500 F.3d 813, 818 (8th Cir. 2007) (setting out the three-part analysis to determine if a defendant's physical condition is sufficient to warrant a reduction in the sentence).

> To determine if an extraordinary physical impairment exists, we ask three questions. First, is the particular defendant's physical condition such that he or she would find imprisonment more than the normal hardship? Second, would imprisonment subject him or her to more than the normal inconvenience or danger? Specifically, would imprisonment worsen his or her condition or does he or she require special care not provided by the [Bureau of Prisons]? Third, does the physical condition have any substantial present effect on the defendant's ability to function?

*Id.* (citations and punctuation omitted).

Charles's condition would not cause him to suffer an abnormal hardship in prison. Charles did not present any evidence at the revocation proceedings to demonstrate how he would suffer an abnormal hardship, other than his own testimony—such evidence is not sufficient to compel a variance in this case. *See id.*

(rejecting the defendant's arguments concerning his health because they were based on conjecture). There is also no evidence that Charles's condition has had any substantial present effect on his ability to function. The district court reasonably concluded that imprisonment would not worsen his condition and that the Bureau of Prisons would accommodate his treatment needs. Charles's health concerns require no variance.

## 2. *Recent Changes to the Guidelines*

Charles next argues that recent changes to U.S.S.G. § 4A1.2(a)(2) and (c) require this Court to reverse and remand his case for re-sentencing.

Recently, the Sentencing Commission clarified the language in these Guidelines, *see* Guidelines Manual Supplement to Appendix C Amendment 709 (stating that the "[t]he amendment simplifies the rules for counting multiple prior sentences and promotes consistency in the application of the guideline"). These changes, in relevant part, address whether two prior convictions are related and should be counted as one sentence. Under the Guidelines as amended,

> [i]f the defendant has multiple prior sentences, [the district court must] determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. [The court must count] any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2).

Charles's argument is without merit and no reversal is required by the Guidelines amendment. The method followed by the district court conformed to the applicable law and correctly determined that Charles's prior sentences were not related and should be counted separately. Even assuming Charles was entitled to be sentenced under the Guidelines as amended, the district court actually did so. Thus, he was not deprived the benefit of this intervening change in the law. We conclude that the district court did not err in calculating Charles's Guidelines sentence.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____