# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 19-2353

———————————————

United States of America

*Plaintiff - Appellee*

v.

John Dailey

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: April 16, 2020
Filed: May 8, 2020

——————————

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

——————————

GRASZ, Circuit Judge.

John Dailey, a podiatrist, pled guilty to submitting false reimbursement claims for services in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 2, and creating a materially false patient progress note in violation of 18 U.S.C. § 1035(a)(2) and 18

U.S.C. § 2. The district court[1] sentenced him to 27 months of imprisonment. Dailey argues the district court committed procedural errors, including making a clearly erroneous factual finding when refusing to depart downward under United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") § 5H1.4. He also argues the district court imposed a substantively unreasonable sentence. We affirm.

## I. Background

Dailey worked for Aggeus Health Care, providing podiatry services to residents of nursing homes and other long-term care facilities. During his tenure, Dailey submitted false Medicare reimbursement claims and progress notes. Dailey's fraudulent acts cost the United States $492,608.

Dailey pled guilty to violating 18 U.S.C. § 1347(a)(1) and (2), and § 1035(a)(2). A presentence investigation report ("PSR") was prepared, which calculated his total offense level as 17 and his criminal history category as II. This resulted in a recommended prison sentence of 27 to 33 months under the Guidelines.

Between his plea and sentencing, Dailey was diagnosed with cutaneous T-cell lymphoma mycosis fungoides, a rare, chronic, and incurable cancer. At sentencing, Dailey asked the district court to depart downward from the advisory Guidelines range under U.S.S.G. § 5H1.4, due to the diagnosis reflecting his physical impairment. Dailey argued a sentence permitting home detention would allow for his highly-specialized treatment to continue and would be as "efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.4. Dailey also asked the district court to vary downward from the recommended sentence, in part because it was higher than the sentences imposed on people he claims were the masterminds of the fraudulent

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

scheme. The district court declined to depart or vary downward and sentenced Dailey to 27 months of imprisonment. During the sentencing hearing, the district court erroneously stated Dailey was "being treated for skin lesions that *may* become cancerous." (emphasis added).

Dailey appealed the sentence, arguing among other things that the district court's failure to recognize he *already had* cancer was procedural error. After oral argument to this court, the government moved to remand the case to the district court for resentencing. The government stated that "[i]n light of information developed and received since the . . . sentencing, it appear[ed] that the interests of judicial economy would be better served in this case by remanding the case to the district court." The government explained the parties would then be able to present to the district court evidence regarding Dailey's medical condition, as well as the ability of the Bureau of Prisons to provide adequate treatment. We granted the government's motion and remanded the case to the district court for a full resentencing in January 2019.

The district court conducted a resentencing hearing in June 2019. Once again, Dailey asked the district court to depart and vary downward from the recommended sentence for reasons similar to those previously advanced. The government again opposed Dailey's requests. The government presented testimony from a regional director of the Bureau of Prisons, Paul Timothy Harvey, a licensed medical doctor and captain in the U.S. Public Health Service. Dr. Harvey, testified that after reviewing Dailey's medical records, he believed the Bureau of Prisons could provide all necessary treatment either on site at the prison or in the vicinity.

After hearing the evidence and arguments from the parties, the district court denied Dailey's request for a downward departure and imposed the same sentence as it had previously; 27 months of imprisonment. The district court explained the government had established through Dr. Harvey's testimony that the Bureau of Prisons would be able to adequately continue Dailey's treatment during his

imprisonment. Dailey appealed, challenging the procedural soundness and substantive reasonableness of his sentence. Specifically, he contests the district court's refusal to depart downward under U.S.S.G. § 5H1.4 and its imposition of a sentence longer than ones received by other Medicare fraudsters.

## II. Analysis

We review Dailey's sentence under an abuse-of-discretion standard. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). We first must consider whether the district committed procedural error. *Id.* "'Procedural error' includes 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Absent procedural error, we consider a sentence's substantive reasonableness, taking into account the totality of the circumstances. *Id.* We may presume a within-Guidelines sentence is substantively reasonable. *Id.*

We first consider Dailey's argument that the district court committed clear error in deciding not to depart downward under U.S.S.G. § 5H1.4. "Guideline § 5H1.4 permits a downward departure based on a defendant's 'extraordinary physical impairment.'" *United States v. Coughlin*, 500 F.3d 813, 818 (8th Cir. 2007) (quotingU.S.S.G. § 5H1.4).[2] "A departure based on a physical condition is a

---

[2]The relevant portion of Guideline § 5H1.4 states:

Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case

-4-

discouraged ground on which to depart and should be limited to exceptional circumstances." *Id.*

We have identified three questions to determine whether an extraordinary physical impairment exists to justify a downward departure: (1) whether the physical condition of the defendant makes it so imprisonment would be more than a normal hardship; (2) whether imprisonment would subject the defendant to more than normal danger or inconvenience; specifically whether imprisonment would worsen the defendant's condition and whether the defendant requires special care the Bureau of Prisons does not provide; and (3) whether the defendant's physical condition has any present effect on his or her ability to function. *Id.*

Typically, we will not review a district court's refusal to grant a downward departure. *United States v. McCoy*, 847 F.3d 601, 607 (8th Cir. 2017). There are exceptions to this rule, however, such as when the district court erroneously thought it was without authority to grant a departure or when the district court had an unconstitutional motive. *Id.*

Here, Dailey maintains we may review, under a clear error standard, the district court's decision that his diagnosis and treatment did not constitute an extraordinary physical condition for purposes of U.S.S.G. § 5H1.4. In support of his argument, Dailey points to *United States v. Robinson*, where we explained the general rule against reviewing denial of a downward departure did not foreclose review of a district court's finding that the defendant did not suffer from an extraordinary physical impairment. 409 F.3d 979, 980–81 (8th Cir. 2005); *accord United States v. Denton*, 434 F.3d 1104, 1115 (8th Cir. 2006) (reviewing the district court's

from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

determination that there was no extraordinary physical impairment for clear error). In *Robinson*, we explained "an erroneous finding that the defendant lacks an extraordinary physical impairment is an erroneous decision that the court lacks authority to depart" from the Guidelines and we review that finding for clear error. 409 F.3d at 981. The government argues we got it wrong in *Robinson*, and that the decision conflicts with numerous other decisions such as *McCoy*,[3] where we applied what the government contends is the "well-settled" rule.

We need not resolve the apparent tension between *Robinson* and the *McCoy* line of cases. Even if we were to assume *Robinson* controls, the district court's determination that Dailey's diagnosis and treatment did not constitute an extraordinary physical condition for purposes of U.S.S.G. § 5H1.4 was not clearly erroneous. Dailey's diagnosis no doubt confirms a very serious condition, which creates special needs and requires specialized treatment. But through the testimony of Dr. Harvey, the government convinced the district court of the Bureau of Prison's ability to accommodate Dailey's condition and provide appropriate medical care. After carefully reviewing the record, we are not left with a "definite and firm conviction" that the district court was mistaken. *See United States v. Garcia*, 512 F.3d 1004, 1005 (8th Cir. 2008) (describing the clear error standard).

Nor do we detect any other procedural error. Dailey's complaint that the district court inadequately explained its reasons for imposing the chosen sentence is

---

[3]Besides *McCoy*, the government cites an array of cases, both before and after *Robinson*, where we have refused to review the denial of a motion to depart downward under U.S.S.G. § 5H1.4. *See United States v. Wanna*, 744 F.3d 584, 588–89 (8th Cir. 2014); *United States v. Stong*, 773 F.3d 920, 926 (8th Cir. 2014); *United States v. Varner*, 678 F.3d 653, 658–59 (8th Cir. 2012); *United States v. Toothman*, 543 F.3d 967, 971 (8th Cir. 2008); *United States v. Washington*, 467 F.3d 1122, 1124–25 (8th Cir. 2006); *United States v. Eagle*, 133 F.3d 608, 611 (8th Cir. 1998); *United States v. Kessler*, 48 F.3d 1064, 1065 (8th Cir. 1995).

without merit. There is no requirement that the district court mechanically recite the sentencing factors listed in 18 U.S.C. § 3553(a), but "[r]ather, it simply must be clear from the record that the district court actually considered the . . . factors in determining the sentence." *Feemster*, 572 F.3d at 461 (quoting *United States v. Walking Eagle*, 553 F.3d 654, 659 (8th Cir. 2009)). Here, the district court referenced the § 3553(a) factors and discussed several of them in detail. The district court took into account the nature and circumstances of the offense, including Dailey's role in the Medicare fraud and the resulting harm to the United States taxpayers. The district court also took into account Dailey's history and characteristics, explaining Dailey "enjoyed a childhood free of neglect or abuse," "was actively raised by both parents who remain married," had "no history of mental issues or substance abuse," and was "being treated for a rare form of skin cancer." And when Dailey argued that a Guidelines sentence would create unwarranted disparities because the two masterminds of the scheme were each sentenced to only twelve months of imprisonment, the district court observed this alleged disparity was warranted because Dailey had a prior conviction for virtually the same crime, increasing his Criminal History for purposes of the Guidelines.

It is true the district court's explanation of its decision to not depart downward under U.S.S.G. § 5H1.4 was less than robust. But looking at the record as a whole, it is clear the district court considered the factors identified in *Coughlin* as relevant when considering a downward departure. 500 F.3d at 818. The district court explained that, after reviewing the record, it found Dailey's "diagnosis and treatment does not evidence an extraordinary physical condition that warrants departing downward pursuant to U.S. Sentencing Guidelines Section 5H1.4." Further, the district court found persuasive Dr. Harvey's testimony that the Bureau of Prisons would be able to "adequately continue [Dailey's] treatment during his confinement." Taken in light of the evidence presented at the resentencing hearing, which largely focused on Dailey's condition and the Bureau of Prisons' ability to treat him, we conclude the district court's explanation was sufficient.

Having identified no procedural error, we are left only to decide whether Dailey's 27-month sentence is substantively unreasonable. "We begin from a presumption of reasonableness given that his sentence is at the very bottom of the applicable guideline range." *United States v. Sharkey*, 895 F.3d 1077, 1080–81 (8th Cir. 2018). Dailey tries to overcome this presumption by pointing to the disparity between his sentence and the twelve-month sentences imposed on defendants he claims were the masterminds of the Medicare-fraud scheme. But we agree with the district court's observation that the Guidelines recommended a longer sentence for Dailey because of his higher Criminal History category, since he had previously committed another similar crime. Thus, it is no surprise that Dailey received a longer sentence. *See United States v. Davis-Bey*, 605 F.3d 479, 482–83 (8th Cir. 2010) (recognizing U.S.S.G. § 3553(a)(6) directs courts to consider the need to avoid *unwarranted* disparities among defendants with *similar* records, and holding a difference in criminal history is a legitimate distinction warranting a disparity in sentences).

The within-Guidelines sentence was not substantively unreasonable.

## III. Conclusion

We affirm the district court's judgment.

_____